FURLONG v. WINNE & McKAIN CO.  (No. 25–48.)

(Supreme Court, Appellate Division, Third Department.  March 18, 1915.)

1. APPEAL AND ERROR ⬅171—THEORY OF CASE IN TRIAL COURT—REVIEW ON APPEAL—OBJECTIONS.

Where an action for injuries to plaintiff stopping a runaway team of defendant was without objection tried on the theory of negligence to fasten the team at all, or negligent failure to adequately fasten it, though the complaint merely alleged an entire failure to fasten the team, defendant could not, on appeal from judgment in its favor, urge that, without an amendment of the complaint, recovery would not be authorized on the ground that the fastening as proved was insufficient.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1053–1063, 1066, 1067, 1161–1165; Dec. Dig. ⬅171.]

2. MUNICIPAL CORPORATIONS ⬅706—CARE OF TEAMS—PRIMA FACIE NEGLIGENCE.

That a team on a public street ran away is some evidence of negligence of the owner to one voluntarily stopping the team to prevent it running into children playing in the street.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. ⬅706.]

3. MUNICIPAL CORPORATIONS ⬅706—CARE OF TEAMS—EVIDENCE—QUESTION FOR JURY.

In an action for injuries to one stopping a runaway team in a public street, evidence of the owner's negligence held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. ⬅706.]

Woodward and Kellogg, JJ., dissenting.

Appeal from Trial Term, Schenectady County.

Action by Peter Furlong against the Winne & McKain Company. From a judgment for defendant, rendered on a verdict directed by the court, plaintiff appeals.  Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Eugene D. Flanigan, of Albany, for appellant.

Henry S. Baehler, of Schenectady (Wm. Dewey Loucks, of Schenectady, of counsel), for respondent.

SMITH, P. J.  Upon the 24th day of June, 1912, the plaintiff was injured in attempting to stop a runaway team belonging to the defendant, upon a public highway in the city of Schenectady.  The team was attached to a coal delivery wagon, and was running away with the empty wagon along the street upon which were playing some children, among which children were two of plaintiff's own.  As he swears, in order to protect those children, he ran into the street and caught hold of the running horses, and finally brought them to a stop; in so doing he was injured, and he now seeks to recover damages for such injuries.  At the trial term a verdict was directed for the defendant, and upon the judgment entered upon such directed verdict this appeal is taken.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1, 2] Plaintiff was entitled to have this case submitted to the jury, both upon the question whether these horses were at all secured before they started to run, and also whether that security was adequate. It is true that the complaint seems to charge negligence only as to an entire failure to fasten the horses. But the case was tried upon both theories, without an objection having been once taken that the pleadings were insufficient. Not having taken the objection at the time, the respondent is not in a position now to urge that without an amendment of the pleading a recovery would not be authorized upon this specific ground that such fastening as was proven was insufficient. The fact that the horses were running away without a driver called for an explanation from the defendant. Prima facie that fact alone would seem to be some evidence of negligence upon defendant's part.

[3] If this be true, the only proof that the horses were fastened by two weights was the evidence of the driver and the evidence of the brewery man who was cleaning the coal. The evidence of the driver is under suspicion, both by reason of his being in the employ of the defendant, and also by reason of the fact that if the horses were not fastened he was the man responsible for the accident. The jury might well have found that the brewery man, who received the coal, being down in the coal cellar, was not in a position to see whether these weights were attached to the horses, or that he would not naturally have taken notice of such a fact. The plaintiff voluntarily placed himself in danger to avoid possible accidents to some children from a runaway team. The facts of the case should be viewed fairly in his effort to recover damages for the injury resulting therefrom from the owner of the team, which was thus permitted to create the dangerous situation.

The judgment should therefore be reversed, with costs to appellant to abide event, and a new trial granted. All concur, except WOODWARD, J., who dissents, in opinion in which KELLOGG, J., concurs.

WOODWARD, J. (dissenting). The complaint in this action alleges that the plaintiff was seriously injured in an attempt to stop a runaway team, which menaced the lives and limbs of his own and other children playing in the highway where the team was approaching, and that—

"all of said injuries so sustained as aforesaid were caused solely and wholly by reason of the fault, carelessness, recklessness, and negligence of the defendant, and that said team of horses ran away in consequence of the said defendant leaving said horses standing on the street unattended and without any person in charge of same, and without being fastened or held in any way or manner, and without having any weight attached to said horses, or to the bit or rein of said horses, and that the said horses were unruly and fractious, and had on previous occasions, as plaintiff is informed and verily believes, run away, and that at the time of said injuries there was no one in charge of said team of horses, and no person or persons was or were in said coal wagon."

This allegation of the complaint was denied by the answer, and the burden of proving the allegations was thus upon the plaintiff. The trial resulted in the court dismissing the complaint upon defendant's motion, and the plaintiff appeals to this court.

The plaintiff urges upon this appeal that the court erred in granting the motion for a nonsuit, and that he was entitled to go to the jury upon the question—

"as to whether the rope offered in evidence, which it was claimed was attached to the weight on one of the runaway horses, was a fit and proper rope and sufficient in strength to properly secure these horses and hold a weight of 18 pounds."

It is a sufficient justification for the ruling of the court upon this point that no such issue was tendered. The allegation of negligence was that the defendant had left—

"said horses standing on the street unattended and without any person in charge of same, and without being fastened or held in any way or manner, and without having any weight attached to said horses, or to the bit or rein of said horses, and that said horses were unruly and fractious, and had, on previous occasions, * * * run away."

No suggestion is here made that the defendant had used improper rope or fastening; the allegation was that it had used none at all, and the only evidence which is suggested as sustaining this allegation of the complaint is the testimony of one who looked over the team after it had been stopped, and he says that he saw no snap attached to the bridle of either of the horses. The plaintiff was bound to prove the particular negligence alleged in his complaint; he was bound to show that the team was unattended, and that it was left in the street without "being fastened or held in any way or manner, and without having any weight attached"; and this issue is not met by testimony that at some time after the horses had been stopped the witness saw no snap attached to the bits or bridle of the horses, and even this testimony is of a very negative character. Two witnesses, wholly uncontradicted, testified that the team was in charge of a driver, who is not shown to have been incompetent; that each of the horses had a weight of 18 pounds attached to the bridle by means of a rope and snap while they were standing awaiting the unloading of a consignment of coal; that the coal had been discharged and that the driver had detached one of the weights and was placing the same upon the wagon, when the team suddenly started and ran away; and it further appeared, from the uncontradicted evidence, that the steam was started by an employé of the brewery where the coal had been delivered, who, in operating a hose to wet down the coal, directed a stream of cold water upon the feet of the horses, causing them to get away.

There was no suggestion in the pleadings or in the evidence that the rope used was not a proper one; the plaintiff's theory of the case was that the team was not fastened in any manner whatever, and the jury had no right to speculate upon the question of whether a particular piece of rope which was used was adequate or not. If the complaint had asserted as a ground of negligence that the team was improperly fastened, or that the fastening used was inadequate or defective, and if this issue had been tried, it would, of course, be for the jury to determine whether the rope was a proper one; but here the plaintiff assumed the burden of proving that the team was not fastened at all, and without furnishing any evidence upon the direct point, and after

the defendant had shown conclusively that the team was fastened in an approved manner, the plaintiff had no right to have the jury pass upon the sufficiency of the rope, particularly as no such issue was suggested during the progress of the trial. There was no evidence whatever that the rope broke at the time the horses started; that it was in any particular unfit for the use to which it was put. The jury had nothing before it except a piece of rope which was broken; but whether the rope broke during the run, or at the initial movement of the team, does not appear, and, unless it failed at the time the team became frightened, and thus demonstrated its uselessness in preventing the starting, it could have no bearing upon the question. The evidence seems to indicate that the weight was carried or dragged a distance of 200 feet before it separated from the horses, and this might have been due to its catching upon some obstruction and causing a strain entirely beyond the reasonable anticipations of man.

In the case of Pearl v. Macaulay, 6 App. Div. 70, 39 N. Y. Supp. 472, the question presented was whether the court was justified in holding that the defendant had shown sufficient facts to exonerate him after a prima facie case of negligence in a runaway case, and it was held that the matter should have been sent to the jury; but in that case there was evidence that the defendant had made an admission that the horse was not hitched at all, and the reference to the rope alleged to have been used in that case was incidental, and had no reference to a situation such as developed upon this trial. And the case of Thompson v. Plath, 44 App. Div. 291, 60 N. Y. Supp. 621, does not help the plaintiff under the circumstances which he developed upon the trial. There was a complete failure on the part of the plaintiff to establish the cause of action asserted, and the complaint was properly dismissed.

The judgment appealed from should be affirmed, with costs.

KELLOGG, J., concurs.