■ KASHAWN WILLIAMS, an Infant, by His Mother and Natural Guardian, TONYA WILLIAMS, et al., Respondents, v CITY OF

NEW YORK, Defendant, JORGE SANCHEZ et al., Respondents, and PRIDE DEVELOPMENT & CONSTRUCTION, INC., Appellant. [761 NYS2d 221] —Order, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered on or about October 10, 2002, which, to the extent appealed from, denied defendant-appellant's cross motion for summary judgment seeking dismissal of plaintiff's third amended complaint, unanimously reversed, on the law, without costs, the cross motion granted, and the third amended complaint dismissed as against defendant-appellant. The Clerk is directed to enter judgment in favor of defendant-appellant dismissing the third amended complaint as against it.

Plaintiff Kashawn Williams was injured when a black Labrador dog exited a common driveway between 1036 and 1038 Ward Avenue and chased him into the street, causing him to be hit by a vehicle driven by defendant Jorge Sanchez. The owners of the dog, defendants Carmen Martinez and Catalina Vargas, own the property located at 1038 Ward Avenue. Defendant NHS Community Development Corp. (NHS) owns the adjacent property at 1036 Ward Avenue. At the time of the accident, NHS was an out-of-possession owner who had contracted with defendant Pride Development & Construction, Inc. (Pride), a general contractor, to perform construction and rehabilitation at the site. The common driveway shared by the two properties was separated from the sidewalk by an iron gate. It is plaintiff's contention that one or more defendants were negligent in leaving the gate open, allowing the dog to escape the property and chase plaintiff into the street.

Although plaintiff's complaint sounds in common-law negligence, it also includes allegations that the Labrador in question had "vicious propensities." Notwithstanding these allegations, there is not a shred of evidence in the record showing that this dog had any such propensities prior to the date of the accident. Although defendant Vargas states that the dog was acquired as a "guard dog," she cites no aggressive behavior other than loud barking (*see Sers v Manasia*, 280 AD2d 539, 540 [2001], *lv denied* 96 NY2d 714 [2001] [fact that dog was occasionally confined in pen, and use of "beware of dog" sign did not create issue of fact as to dog's vicious propensities]).

After the City and NHS moved for summary judgment,* defendant Pride cross-moved for the same relief. Pride argued that its workers were not present at 1036 Ward Avenue on the date of plaintiff's accident and, thus, could not have left the

---

* The motion and cross motion by the City and NHS were granted by the IAS court on the ground that neither defendant had possession of the premises nor notice of any dangerous condition on such premises.

gate open. Pride also argued that it could not be held liable since it did not own the dog. Defendants Martinez and Vargas opposed Pride's cross motion, arguing that a triable issue of fact existed as to whether Pride's employees were present on the day of the accident and left the gate open. They relied on Vargas's deposition testimony and her brother Joseph Vargas's affidavit, both of which allege that the Pride workers were present on that day. The IAS court denied Pride's cross motion, finding that "the sworn statements of both defendant Vargas and affidavit of Joseph Vargas create a sufficient question of fact as to the presence, notice and possible responsibility of Pride personnel for the open gate at the time of the incident."

On appeal, Pride argues that it cannot be liable for plaintiff's injuries since it owned neither the dog nor the premises, nor was it aware that the dog had any vicious propensities. Given these facts, Pride argues, it owed no duty to plaintiff. We agree.

Initially, we note that plaintiffs have disclaimed any reliance on a strict liability theory based on the dog's alleged vicious propensities. Plaintiffs argue in their brief that their "simple negligence" claim against Pride "is not based either on owning or harboring the dog," but instead is premised on the allegation that Pride "negligently kept a common driveway gate open which allowed the subject dog to escape the premise[s] which is a proximate cause of plaintiff-respondent's injuries."

This Court has in the past recognized that "in certain limited circumstances, claims of injury caused by animals may be based upon a theory of negligence rather than upon the strict liability resulting from the vicious propensity rule" (*Schwartz v Armand Erpf Estate*, 255 AD2d 35, 38 [1999], *lv dismissed* 94 NY2d 796 [1999]; *but see Shaw v Burgess*, 303 AD2d 857 [2003]). However, such cause of action grounded in negligence "may not be based merely upon the failure to prevent the complained-of misbehavior by the animal," but rather must be based on the breach of some distinct, enhanced duty required by the particular circumstances (255 AD2d at 38).

For instance, in *Schwartz* (255 AD2d at 40), we held that a more exacting duty should be imposed on a landowner due to the danger created by the presence of horses in an area where a small child could easily gain access, which danger might not be appreciated by children. Similarly, in *Diamond-Fisher v Greto* (276 AD2d 413 [2000]), we held that a question of fact existed as to whether the defendant day-care provider was negligent in allowing a 20-month-old infant to reach for a bowl out of which her Siberian Husky was eating. Despite the lack

of evidence of vicious propensity of the Husky, we stated that "there is a heightened duty to protect [a] small child from potential dangers" (*id.*). Likewise, in *Colarusso v Dunne* (286 AD2d 37, 40-41 [2001]), the Second Department held that questions of fact existed as to whether a day-care provider breached a duty of care owed to the infant plaintiff by failing to take reasonable measures to prevent interaction with the provider's 75-pound Labrador Retriever.

Plaintiff has failed to allege similar factual circumstances warranting the imposition of a heightened duty of care on Pride in this case. In the first instance, it is undisputed that Pride was not the owner of the Labrador in question. Thus, in determining whether Pride owed any duty of care to plaintiff with respect to the dog, we must take into account that Pride and its employees had no authority to control or confine the animal. Indeed, the record demonstrates that a Pride supervisor asked defendant Vargas's brother to tie up the dog so that it would not wander into the construction site and relieve itself. This fact evidences that Pride had to rely on the actual owner of the dog to control its behavior.

In addition, unlike most of the cases which allow a negligence theory of liability, in this case Pride was neither the owner nor the tenant of the premises where the dog was kept, but rather a contractor performing a long-term project on the adjacent property. Thus, Pride did not have control over the premises where the dog was kept and only shared a possessory interest in the common driveway with the owners of 1038 Ward Avenue. Although Pride's continued presence at the site could give rise to a duty to keep the premises in reasonably safe condition (*see generally Basso v Miller*, 40 NY2d 233, 241 [1976]), it did not give rise to a duty to prevent the neighbor's dog, over which it had no authority, from escaping through an open gate.

Generally, a property owner owes a duty to protect third persons from injury by an animal only where it "ha[s] control of the premises or other capability to remove or confine the animal" (*Strunk v Zoltanski*, 62 NY2d 572, 575 [1984]). Here, Pride's lack of authority to control the dog or the premises in question mandates a finding that no duty existed in this case (*see Joe v Orbit Indus.*, 269 AD2d 121, 122 [2000] [in absence of showing that property owner owned or controlled the dog or the adjacent lot where the dog was kept, the owner cannot be liable]; *Yeostros v Jackson*, 258 AD2d 886 [1999] [owners not liable for injuries caused by tenant's dog where they did not have control of the premises or other capability to remove or confine the animal]).

Contrary to plaintiffs' argument, Pride's use of the gate to the common driveway was insufficient, by itself, to give rise to a duty to protect plaintiff or the general public from the neighbor's dog. As noted, Pride did not own the dog and plaintiff cites no authority for the proposition that Pride should share the responsibility of having to secure it. Moreover, there is no evidence in the record supporting plaintiff's argument that Pride knew or should have known that the failure to close the gate would give rise to a foreseeable risk that the dog would escape and create a danger to others (*cf. Goldberg v LoRusso*, 288 AD2d 257 [2001] [owner's prior precautions in securing dog in basement raised issue of fact as to foreseeability of risk of unsecured dog]; *St. Germain v Dutchess County Agric. Socy.*, 274 AD2d 146 [2000] [defendants not entitled to summary judgment where allowing heifers to be led along same path as fairgoers raised risk of foreseeable injury]). The dog in this case had exhibited no vicious tendencies in the past and there was no evidence that the dog posed any risk to pedestrians on the sidewalk, by vicious behavior or otherwise. The fact that Vargas had asked Pride's employees to keep the gate closed on more than one occasion does not give rise to any inference that the dog posed a risk to others—rather, given the lack of evidence of any aggressive behavior by the dog, the request more likely would be understood as an effort to prevent the animal from running away.

We note that even though some courts have permitted negligence claims arising out of injuries caused by dogs escaping from a specific property, which also occurred here, liability in these cases was imposed solely on the dogs' owners and, more significantly, was predicated on a violation of local ordinances prohibiting owners from allowing dogs to run "at large" (*see Faller v Schwarz*, 303 AD2d 624, 625 [2003] [issue of fact as to whether owner was negligent in failing to secure his dog as required by local ordinance, resulting in dog's escape from property and collision with plaintiff's motorcycle]; *Silva v Micelli*, 178 AD2d 521, 522 [1991] [verdict finding owner negligent in failing to secure dog in violation of ordinance, which resulted in dog's chasing plaintiff into oncoming car, was not against weight of evidence]). For the reasons stated above, we decline to impose a heightened duty on Pride for negligently failing to secure a dog where Pride did not own the land, it did not own or control the dog, and there was no evidence that the dog had vicious propensities or otherwise posed a foreseeable risk of harm to others. Pride's motion for summary judgment should have been granted. Concur—Nardelli, J.P., Sullivan, Friedman, Marlow and Gonzalez, JJ.