Danielle Bernstein, an Infant, by Her Father and Natural Guardian, Roger Bernstein, et al., Appellants, v Penny Whistle Toys, Inc., et al., Respondents and Third-Party Plaintiffs. Carol Axel Weiner, Third-Party Defendant-Respondent. [834 NYS2d 173]—

Order, Supreme Court, New York County (Jane S. Solomon, J.), entered March 28, 2006, which, inter alia, granted defendants' motion for summary judgment dismissing the complaint, affirmed, without costs.

Plaintiffs seek to recover for injuries attributable to a dog bite. In view, however, of the absence of any evidence that the dog in question exhibited a vicious propensity prior to the incident involving the infant plaintiff, no triable issue was raised (*Bard v Jahnke*, 6 NY3d 592 [2006]).

In our view, the Court of Appeals has squarely spoken on this issue in finding that "when harm is caused by a domestic animal, its owner's liability is determined solely by application of the rule articulated in *Collier* [*v Zambito*, 1 NY3d 444, 446 (2004)]" (*Bard*, 6 NY3d at 599), a rule that for almost 200 years has required a finding that a dog owner knew or should have known of the animal's vicious propensities before strict liability for the animal's actions can be imposed.

The dissent would circumvent the clear meaning of the Court of Appeals' rulings by constructing a theory grounded in premises liability, the practical impact of which is to profoundly increase the exposure faced by individuals who own a domestic animal where that animal has shown no propensity for being vicious. The reality is that a significant number of these types of cases, including *Collier* and *Bard*, involve situations where domestic animals injured individuals on premises either owned or operated by the person who also owns the animal. In our view, such an expansion is impermissible in light of the clear and unequivocal language contained within both *Collier* and *Bard*. Concur—Marlow, McGuire and Kavanagh, JJ.

Mazzarelli, J.P., and Saxe, J., dissent in part in a memorandum by Saxe, J., as follows: I would reverse and reinstate the

second cause of action of this complaint on behalf of an infant plaintiff who, while shopping at a Bridgehampton toy store, was bitten in the face by the owner's dog.

On June 8, 2003, plaintiff Danielle Bernstein, then eight years old, accompanied her friend and her friend's mother, third-party defendant Carol Weiner, to defendant Penny Whistle Toys, a toy store located in Bridgehampton, New York. According to Danielle, she had a lollipop in her mouth at the time, although others disputed that assertion. When the three entered the store, there were no other customers present. Defendant Juan A. Mendez, the owner of the store, was present, as was his dog, Scooter, a male Labrador mix, whom Mr. Mendez had adopted from the East Hampton Animal Rescue Fund approximately five years earlier. Scooter, who accompanied Mr. Mendez to the store approximately twice a week, was tied to a 20-foot leash and was lying on the floor with his front paws straight out in front of him and his back legs under him, and he sat up when Danielle approached him. Ms. Weiner asked Mr. Mendez if the dog was friendly, and Mr. Mendez said he was. Danielle then walked up to the dog, let him smell her knuckles, and then knelt down and began petting him, scratching behind his ear and patting his back. Mr. Mendez observed Danielle pat Scooter on the back, hug him and kiss him, and he and Ms. Weiner spoke of the love that could arise instantly between a child and a dog. Suddenly, without any apparent provocation, Scooter growled "a very short growl" and then bit Danielle's right cheek, causing significant disfiguring injury, requiring 40 to 50 stitches both on the inside and the outside of her cheek.

Mr. Mendez testified that he did not know why Scooter had bitten Danielle. He had never previously bitten or snapped at anyone, had never growled, lunged or jumped at anyone. Although Scooter would bark if someone knocked on the door of their house, he would not, for example, bark at people walking down the street. Prior to this incident, Mr. Mendez had never received any complaints about Scooter's presence at the store.

Ms. Weiner similarly testified that Scooter did not exhibit any aggressive behavior prior to biting Danielle. To the contrary, Scooter responded to Danielle pleasantly and Ms. Weiner did not fear for Danielle's safety when she observed Danielle petting the dog. Indeed, plaintiffs conceded that there was no evidence of vicious propensities on Scooter's part.

In granting the motion by defendants Penny Whistle and Mendez for summary judgment dismissing the complaint, the motion court observed that in the absence of evidence of vicious propensities, no strict liability cause of action could be

maintained, and that under the circumstances, defendants owed no enhanced duty to plaintiff, as they might if Danielle were a younger infant, or if the animal were of a less good-natured breed. Defendants now rely heavily on the Court of Appeals' recent decision in *Bard v Jahnke* (6 NY3d 592 [2006]) for the proposition that recovery in domestic animal injury cases is limited to theories of strict liability, which obviously must fail in this case due to plaintiffs' concession that Scooter did not demonstrate any vicious propensities.

As defendant points out, the Court of Appeals has stated that "when harm is caused by a domestic animal, its owner's liability is determined solely by application of the rule articulated in *Collier* [*v Zambito*, 1 NY3d 444, 446 (2004)]," which rule states that an owner of a domestic animal who knows or should have known of the animal's vicious propensity will be held strictly liable for the harm the animal causes as a result of those propensities (*see Bard v Jahnke* at 599).

However, it is important to recognize that these cases only discuss the animal *owner's* liability. Defendants here owed an additional duty to Danielle, beyond that of a pet owner who knows the pet has vicious propensities. Defendants Mendez and Penny Whistle own and operate a business, the primary purpose of which is to sell its wares to and for children. It is necessarily their goal to attract children into the store as customers. It may be assumed that, especially in the summertime, many of those young customers will arrive in the store holding or eating ice cream, custard, or other sweets or foods. Similarly, it is quite likely that a dog, otherwise perfectly friendly and well behaved, might experience an instinct to sniff out and attempt to obtain and consume a morsel of food or something sweet that was placed in close proximity.

Consequently, Mendez and Penny Whistle, as proprietors of the business, in addition to the legal obligations of a dog owner, must also be held to the standard of care imposed by the law of premises liability, to maintain their premises in a reasonably safe condition in view of the circumstances (*see Basso v Miller*, 40 NY2d 233, 241 [1976]). Under these circumstances, this duty would encompass recognizing the additional danger posed by an otherwise well-behaved dog present in the store, given the likely presence of children with food items. In this instance, while it is unknown whether it was the sweet aroma emanating from the lollipop in Danielle's mouth as she knelt down and hugged Scooter that prompted his reaction, it is not improbable, and is certainly a logical inference, sufficient to warrant fact-finding on the issue.

We do not view *Bard v Jahnke* as eradicating the continued viability of prior cases which impose an enhanced duty toward children upon property owners who keep animals, where the presence and actions of children on the premises are reasonably foreseeable (*see Williams v City of New York*, 306 AD2d 203, 205-206 [2003]; *Colarusso v Dunne*, 286 AD2d 37 [2001]; *Diamond-Fisher v Greto*, 276 AD2d 413 [2000]; *Schwartz v Armand Erpf Estate*, 255 AD2d 35 [1999], *lv dismissed* 94 NY2d 796 [1999]). Indeed, these cases, like the present case, focus not merely upon the obligations of the owners of domestic animals, but upon the obligations of property owners, where animals are kept on the property, and children are expected to be present.

This analysis does not circumvent the ruling of *Bard, supra*; rather, it merely imposes all applicable legal duties on defendant. This is not the only circumstance in which the law imposes on a property owner the duty to maintain premises in a reasonably safe condition although some other related duty was eliminated. For instance, even if a premises owner's duty to warn of a dangerous condition is obviated by a determination that the condition was open and obvious, the owner's duty to maintain premises in a reasonably safe condition remains unaffected (*see Cohen v Shopwell, Inc.*, 309 AD2d 560, 562 [2003], citing *MacDonald v City of Schenectady*, 308 AD2d 125, 128-129 [2003]).

We note that application of this duty can apply only to those owning or operating premises in a manner that fails to provide appropriate protection for those foreseeably present at the premises against foreseeable risks to them. Therefore, our analysis would not create the potential liability about which the motion court expressed concern: that of owners of gentle dogs who allowed a child to pet their dogs on the street, or babysitters allowing their charges to do so.

In view of the foregoing, defendants' motion for summary judgment should have been granted only as to plaintiffs' first cause of action, sounding in strict liability based upon a claim of vicious propensities, and denied as to the second cause of action. The grant of summary judgment to third-party defendant is properly affirmed.