[862 NYS2d 522]

MELANIE PETRONE, Appellant, v BERNARD FERNANDEZ et al., Respondents.

Second Department, July 8, 2008

[redacted]

### APPEARANCES OF COUNSEL

*Michael A. Cervini*, Jackson Heights (*Robin Mary Heaney* of counsel), for appellant.

*Paganini Herling Cioci Cusumano & Farole*, Lake Success (*John J. Kearney* of counsel), for Bernard Fernandez, respondent.

### OPINION OF THE COURT

DILLON, J.

This case involves a United States Postal Service worker delivering mail, an unleashed dog, and an alleged chase resulting in injuries to the mail carrier. We are asked to clarify whether, under the current state of the law, the owner of a dog may be held liable to a plaintiff based upon an alleged violation of a local leash ordinance and the dog's behavior, even though the dog had not displayed any prior vicious propensities. We conclude, contrary to the recent holding of the Appellate Division, Third Department, in *Alia v Fiorina* (39 AD3d 1068 [2007]), that a defendant dog owner may be held liable in negligence for violation of a leash law.

### Facts

The plaintiff, Melanie Petrone, was performing her duties as a mail carrier on May 9, 2005. Her mail route included the Douglaston, Queens, home of the defendant Bernard Fernandez, who resided there with the defendant James McCloy. Petrone used a vehicle to drive from block to block, and on certain blocks walked from house to house to make deliveries. The defendants' property was not fenced. The front door of the residence was equipped with a mail slot.

At approximately 11:30 A.M. on the date of the occurrence, Petrone stopped her vehicle across the street from the defendants' house and walked approximately six feet toward the house. According to her deposition testimony, Petrone observed a dog on the defendants' lawn within several feet of her. Petrone decided to "flag" the house, meaning that mail would not be delivered where an unleashed dog was present. She turned and started walking back toward her vehicle, when she noticed that the dog had begun chasing her and had entered the street

behind her. Petrone ran the remainder of the distance to her vehicle. To elude the dog, Petrone jumped feet-first through the open window of her vehicle, allegedly sustaining an injury to her finger.

The Rottweiler dog, named Kai, was owned by McCloy. At his deposition, McCloy presented a version of the events that he had observed on May 9, 2005, different from that testified to by Petrone. McCloy testified that Kai had been asleep on the front lawn of the premises when he heard Petrone yell "[y]our dog." McCloy then observed Petrone either entering or exiting her vehicle through the driver's side window. Petrone was yelling, which prompted Kai to bark, but Kai remained on the front lawn of the premises at all times. McCloy approached Petrone to see if she was alright; Petrone told him that Kai had startled her. McCloy then called the dog over and introduced Kai to Petrone. McCloy also testified that Kai had difficulty running because of severe arthritis.

McCloy denied that Kai had ever exhibited vicious propensities. The dog had never bitten or attacked anyone. At most, while Kai was inside the house, she would occasionally grab mail with her teeth as it was placed through the slot of the front door, barking or growling, though it is unclear from the record whether the dog's behavior in such instances was hostile or playful.

At his deposition, Fernandez, the homeowner, testified that while he did not own Kai, Kai had exhibited no vicious propensities. Fernandez was not home at the time of the occurrence. The plaintiff commenced this litigation by the filing and service of a summons and complaint alleging two causes of action. The first cause of action alleged that the defendants were negligent in failing to guard the plaintiff from the dog's known vicious propensities. The second cause of action, also sounding in negligence, alleged liability based upon the defendants' violation of local laws, an apparent reference to the leash law codified in New York City Health Code (24 RCNY) § 161.05.

Fernandez moved for summary judgment dismissing the complaint insofar as asserted against him, arguing that since the dog exhibited no prior vicious propensities, and that since he did not even own the dog, he could not be held liable as a matter of law under either cause of action asserted in the plaintiff's complaint. In opposition, Petrone, in effect, withdrew the first cause of action based on vicious propensities, stating that the theory of the action was not viciousness, but rather,

the defendants' failure to keep the dog leashed, which permitted the chase that proximately caused the alleged injuries. Petrone asserted that Fernandez's summary judgment motion addressed the claimed absence of Kai's vicious propensities, but did not specifically address the leash-law violation alleged.

In the order appealed from, the Supreme Court granted Fernandez's motion for summary judgment dismissing the complaint. The court found that Fernandez demonstrated that he lacked knowledge of vicious propensities on the part of Kai and, in opposition, Petrone failed to raise a question of fact. The Supreme Court likewise dismissed the cause of action premised upon the alleged leash-law violation, on the ground that such a violation, standing alone, does not raise a triable issue of fact as to liability.

McCloy, the dog's owner, did not move for summary judgment. However, in the order appealed from, the Supreme Court searched the record and awarded summary judgment dismissing the complaint insofar as asserted against McCloy as well.

Petrone appeals the award of summary judgment dismissing the second cause of action as to both Fernandez and McCloy. We modify.

## Liability for Animal-Induced Injuries

The sole issue on appeal is whether the defendants, Fernandez and McCloy, may be held liable in common-law negligence based upon their alleged violation of the local leash law.

Section 161.05 (a) of the New York City Health Code (24 RCNY) provides, insofar as applicable here, that: "a person who owns, possesses or controls a dog shall not permit it to be in any public place or in any open or unfenced area abutting on a public place unless the dog is effectively restrained by a leash or other restraint not more than six feet long."

Leash laws are a recognition that the possession of dogs is subject to the limitation that such possession not interfere with the security, health, and comfort of others (see *People ex rel. Knoblauch v Warden*, 89 Misc 243, 247 [1915], *affd* 168 App Div 951 [1915], *affd* 216 NY 154 [1915]).

Prior to the 2006 decision of the Court of Appeals in *Bard v Jahnke* (6 NY3d 592 [2006]), the law was well-settled in this Judicial Department that a dog owner could be held liable for negligence, including leash-law violations, that proximately caused a plaintiff's injuries, even in the absence of evidence that

the dog's owner had knowledge of the animal's vicious propensities (*see Scotto v Marra*, 23 AD3d 543, 544 [2005]; *Faller v Schwartz*, 303 AD2d 624, 625 [2003]; *McCullough v Maurer*, 268 AD2d 569, 570 [2000]; *Lisi v MRP Holdings*, 238 AD2d 316, 317 [1997]; *Silva v Micelli*, 178 AD2d 521 [1991]). Strict liability for an animal's vicious propensities, and common-law negligence proximately causing injuries, were recognized as two separate and independent theories of liability (*see McCullough v Maurer*, 268 AD2d at 570).

In *Bard*, the Court of Appeals reiterated the well-worn rule that owners of domestic animals could be held strictly liable for harm caused by an animal, where it is established that the owner knew or should have known of the animal's vicious propensities and harm is caused as a result of those propensities (*see Bard*, 6 NY3d at 596; *see also Collier v Zambito*, 1 NY3d 444, 446 [2004]). The strict liability rule can be traced back to the 1816 case of *Vrooman v Lawyer* (13 Johns 339 [1816]). Knowledge of vicious propensities may be established by proof of an animal's attacks of a similar kind of which the owner had notice, or by an animal's prior behavior that, while not necessarily considered dangerous or ferocious, nevertheless reflects a proclivity to place others at risk of harm (*see Bard*, 6 NY3d at 597, citing *Collier*, 1 NY3d at 446, 447). Factors to be considered in determining whether an owner has knowledge of a dog's vicious propensities include 1) evidence of a prior attack, 2) the dog's tendency to growl, snap, or bare its teeth, 3) the manner of the dog's restraint, 4) whether the animal is kept as a guard dog, and 5) a proclivity to act in a way that puts others at risk of harm (*see Collier*, 1 NY3d at 447; *Galgano v Town of N. Hempstead*, 41 AD3d 536 [2007]).

*Bard* did not involve a dog, but rather, a bull used for breeding purposes at a dairy farm. The plaintiff, a carpenter, was performing repair work to a barn located at the defendant's farm when he was thrown into pipes by the bull that was not chained, caged or barricaded (*see Bard*, 6 NY3d at 594). The bull had exhibited no threatening behavior toward any other farm animal or human being in the past (*id*. at 595). A 4-3 majority of the Court of Appeals affirmed the grant of summary judgment to the bull's owner, based upon proof that the bull had exhibited no earlier vicious propensities as defined by *Collier* (*id*.). Indeed, the Court of Appeals stated, in what could be considered dicta under the facts of the case, that "when harm is caused by a domestic animal, its owner's liability is determined

*solely* by application of the rule articulated in *Collier"* (*id.* at 599 [emphasis added]). Judge Robert Smith, writing for the dissent, argued that the bull's owner nevertheless still could be held liable under a theory of common-law negligence for failing to warn the carpenters, whose presence in the barn was foreseeable, of the bull's presence (*id.* at 600, citing Restatement [Second] of Torts § 518, Comments *g, h*). Judge Smith noted that the Court of Appeals had never before held that liability for animal-induced injuries was absolutely limited to circumstances where there was strict liability under *Collier.*

The dissenting opinion in *Bard* exposed a long-standing and significant difference that had existed between the two downstate Judicial Departments on the one hand, and the two upstate Judicial Departments on the other, concerning the question of whether owners of animals could be held liable for injuries under common-law negligence principles in the absence of evidence of the animal's prior vicious propensities. Prior to the Court of Appeals' pronouncement in *Bard,* the First and Second Departments traditionally recognized common-law liability independent of an animal's vicious propensities (*see Evans v Craig,* 25 AD3d 582 [2d Dept 2006]; *Clifford v Turkel,* 7 AD3d 251 [1st Dept 2004]; *Espejo v Reuven Holding,* 308 AD2d 373 [1st Dept 2003]; *Goldberg v LoRusso,* 288 AD2d 257, 259 [2d Dept 2001]; *Colarusso v Dunne,* 286 AD2d 37, 39 [2d Dept 2001]; *St. Germain v Dutchess County Agric. Socy.,* 274 AD2d 146, 150 [2d Dept 2000]; *Schwartz v Armand Erpf Estate,* 255 AD2d 35, 38 [1st Dept 1999]). Some of the cases that had recognized common-law liability involved property owners who arguably breached their duty of care in failing to keep their premises safe for persons whose presence was reasonably foreseeable, by allowing animal-related dangers to exist, albeit without vicious propensities on the part of the animals upon the property (*see e.g. Evans v Craig,* 25 AD3d at 582-583; *Espejo v Reuven Holding,* 308 AD2d at 373-374; *Goldberg v LoRusso,* 288 AD2d at 259; *St. Germain v Dutchess County Agric. Socy.,* 274 AD2d at 149-150; *Schwartz v Armand Erpf Estate,* 255 AD2d at 38-40). Other cases involved the animal owner's violation of a specific leash ordinance as a partial predicate for liability (*see e.g. Arbanil v Flannery,* 31 AD3d 588, 589 [2006]; *Scotto v Marra,* 23 AD3d at 544; *Faller v Schwartz,* 303 AD2d at 624-625; *McCullough v Maurer,* 268 AD2d at 570), as the violation of a municipal regulation or ordinance is some evidence of negligence that may be considered by the trier of fact (*see Bauer*

*v Female Academy of Sacred Heart*, 97 NY2d 445, 453 [2002]; *Elliott v City of New York*, 95 NY2d 730 [2001]; *Watral & Sons, Inc. v OC Riverhead 58, LLC*, 34 AD3d 560, 567 [2006]).

In contrast, the Third and Fourth Departments generally have not recognized liability for animal-induced injuries absent evidence of the animal's vicious propensities (*see Morse v Colombo*, 31 AD3d 916, 917 [3d Dept 2006]; *Shaw v Burgess*, 303 AD2d 857 [3d Dept 2003]; *Roupp v Conrad*, 287 AD2d 937, 938 [3d Dept 2001]; *Plennert v Abel*, 269 AD2d 796 [4th Dept 2000]; *Smith v Farner*, 229 AD2d 1017 [4th Dept 1996]). In the view of those Courts, liability of the owner, if any, is derived not from the manner of keeping or confining the animal, but from keeping the animal despite the owner having knowledge of the animal's vicious propensities (*see Provorse v Curtis*, 288 AD2d 832 [2001]; *Fazio v Martin*, 227 AD2d 809, 810 [1996]; *Lynch v Nacewicz*, 126 AD2d 708, 709 [1987]). In other words, an animal owner's liability may not, by definition of the Third and Fourth Departments, be divorced from the issue of vicious propensities, as there is no recognition of the common-law duty of property owners maintaining domestic animals upon their properties akin to the general duties of property owners discussed in *Basso v Miller* (40 NY2d 233 [1976]). While one reported case from the Fourth Department, *Amado v Estrich* (182 AD2d 1109 [1992]), held that a leash-law violation would constitute evidence of negligence, the Court later held that a leash-law violation, standing alone, is insufficient for proving vicious propensities (*see Elmore v Wukovits*, 288 AD2d 875 [2001]).

In one of the first post-*Bard* leash-law decisions, the Third Department noted *Bard*'s language that when harm is caused by a domestic animal, its owner's liability depends solely upon evidence of vicious propensities (*see Alia v Fiorina*, 39 AD3d 1068, 1069 [2007]). The Third Department reasoned that an animal owner's violation of a local leash law is irrelevant to liability, as statutory violations are merely some evidence of *negligence*, and that negligence is no longer a basis for imposing liability as it has been wholly displaced by the strict liability rules of *Collier* (*id.* at 1069). *Alia* and other reported post-*Bard* decisions from other Departments such as *Roberts v Joller* (39 AD3d 1224 [4th Dept 2007]), in effect, abrogate all potential leash-law related negligence liability of dog owners, absent occurrences within the context of vicious propensities. Another post-*Bard* case, *Bernstein v Penny Whistle Toys, Inc.* (10 NY3d 787 [2008]), also requires the application of the vicious propensi-

ties rule of *Collier*, but did not arise in the context of the violation of a leash law.

Here, Petrone claims that Fernandez and McCloy violated section 161.05 (a) of the New York City Health Code (24 RCNY) in permitting Kai to run free and unleashed in an area open to the public, or in an area that was unfenced and that abutted a public area, and that such violation proximately caused her injuries. Petrone's theory of recovery has support in Second Department case law (*e.g. Scotto v Marra*, 23 AD3d 543 [2005]; *Faller v Schwartz*, 303 AD2d 624 [2003]; *McCullough v Maurer*, 268 AD2d 569 [2000]). In a 1929 negligence case based on the alleged failure to muzzle a dog in accordance with a provision of the former Sanitary Code of the City of New York (*see Hyland v Cobb*, 252 NY 325, 326-327 [1929]), the Court of Appeals likewise acknowledged "that negligence by an owner, even without knowledge concerning a domestic animal's evil propensity, may create liability." The 2006 decision of the Court of Appeals in *Bard* did not expressly overrule *Hyland v Cobb*, and was not at all addressed to the circumstances, if any, under which the violation of a similar local law, rule or ordinance may give rise to civil liability. We therefore do not believe that the holdings of the Second Department cases cited above were abrogated by the *Bard* decision, which might otherwise suggest that a defendant's prior notice of "vicious propensities" is an absolute sine qua non to civil liability in all actions involving personal injuries caused by domestic animals. *Bard* was not a leash-law case, involving instead a bull in a barn of a dairy farm, to which leash laws would not apply. Neither *Bard* nor *Collier* addressed, and did not need to address, the question of whether negligence involving the violation of a leash law can result in liability when an unleashed dog engages in a chase that proximately causes injury. The language employed by the Court of Appeals in *Bard*, that an animal owner's liability is determined "solely" by application of the rule articulated in *Collier* (*Bard*, 6 NY3d at 599), does not appear to have been written by the Court of Appeals with ordinance-violation circumstances in mind, particularly given its prior holding in *Hyland v Cobb* (252 NY 325 [1929]). Indeed, were we to interpret it in such a manner, protections provided by municipal leash laws could be severely weakened, if not eliminated altogether.

The violation of a leash ordinance, standing alone, has been recognized by the Second Department as insufficient to support a finding of liability against a dog owner (*see Zelman v Co-*

*sentino*, 22 AD3d 486 [2005]; *Cameron v Harari*, 19 AD3d 631 [2005]; *Althoff v Lefebvre*, 240 AD2d 604 [1997]). However, in contrast to mere "loose dog" cases, this Department has recognized the potential liability of dog owners where a leash-law violation is coupled with affirmative canine behavior such as a dog bite (*see Scotto v Marra*, 23 AD3d at 544) or an attack upon the plaintiff (*see McCullough v Maurer*, 268 AD2d at 570), or where there is a history of prior violations (*see Arbanil v Flannery*, 31 AD3d at 589; *Faller v Schwartz*, 303 AD2d at 625).

### Summary Judgment Should Not Have Been Awarded to the Defendant McCloy

Here, there are two factual versions of the events leading to Petrone's alleged injury, one in which Kai actively chased Petrone under circumstances constituting a violation of New York City Health Code (24 RCNY) § 161.05 (a), and one in which Kai was passive and remained upon his owner's property. If Mc-Cloy's deposition testimony established a prima facie entitlement to summary judgment upon a search of the record, Petrone's testimony raised triable issues of fact in opposition (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Decisions from this Department recognize under these circumstances issues of fact requiring trial (*see Arbanil v Flannery*, 31 AD3d at 589; *Scotto v Marra*, 23 AD3d at 544; *Faller v Schwartz*, 303 AD2d at 625; *McCullough v Maurer*, 268 AD2d at 570). On this basis and upon its search of the record, the Supreme Court should not have awarded summary judgment dismissing the second cause of action insofar as asserted against McCloy.

### Summary Judgment Was Properly Granted in Favor of Fernandez

In light of our findings that a statutory leash-law violation, coupled with other aggressive behavior by a dog, may serve as a predicate for an owner's potential liability, we agree with the Supreme Court's granting of Fernandez's motion for summary judgment dismissing the complaint insofar as asserted against him, albeit for a reason different from that relied upon by the court. The City's leash law is applicable only to "a person who owns, possesses or controls a dog" (*see* NY City Health Code [24 RCNY] § 161.05 [a]). Fernandez established his prima facie entitlement to judgment as a matter of law by demonstrating he did not own Kai and was not even home at the time of the oc-

currence to control the premises or the dog. He, therefore, owed no duty to Petrone (*see Williams v City of New York*, 306 AD2d 203, 206 [2003]; *see generally Turcotte v Fell*, 68 NY2d 432 [1986]; *Pulka v Edelman*, 40 NY2d 781 [1976]). In opposition, Petrone failed to raise a triable issue of fact that Fernandez breached any duty to her (*see Williams v City of New York*, 306 AD2d at 206).

Accordingly, the order is modified, on the law, by deleting the provision thereof which, upon searching the record, awarded summary judgment dismissing the second cause of action insofar as asserted against the defendant James McCloy; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.

MASTRO, J.P., FISHER and McCARTHY, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provision thereof which, upon searching the record, awarded summary judgment dismissing the second cause of action insofar as asserted against the defendant James McCloy; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.