◼ MARY WARDROP, Appellant, v JOHN KOERNER et al., Respondents. [617 NYS2d 946] —Mercure, J. Appeal from an order of the Supreme Court (Tait, Jr., J.), entered September 17, 1993 in Madison County, which, *inter alia,* denied plaintiff's motion for partial summary judgment on the issue of liability.

Plaintiff commenced this action to recover for injuries she sustained when she fell from a horse on defendants' property. The accident occurred during a field test conducted in order to permit defendant Polly Koerner (hereinafter defendant) to assess plaintiff's riding ability and overall suitability for a

position with defendants as an exercise rider of two-year-old thoroughbred horses being prepared for racing. Plaintiff's theory of liability is that, without first making an assessment of plaintiff's riding ability, defendant selected Scott, a "green" or inexperienced horse, for plaintiff and directed plaintiff to catch up and "ride company" (side-by-side) with her, something Scott had never done before. Following joinder of issue and discovery, plaintiff moved and defendants cross moved for summary judgment. Supreme Court denied plaintiff's motion and awarded summary judgment in favor of defendants and dismissed the complaint. Plaintiff appeals.

We affirm. It is fundamental that a horse is a domestic animal and that the owner or person charged with its care is not liable for injury caused by the animal unless he or she knew or should have known of its vicious or violent propensities (see, Landes v H.E. Farms, 169 AD2d 446; Appel v Charles Heinsohn, Inc., 91 AD2d 1029, affd 59 NY2d 741; Roots v Claremont Riding Academy, 20 AD2d 536, affd 14 NY2d 827; 3 NY Jur 2d, Animals, § 46, at 623-624; see also, Muller v McKesson, 73 NY 195). In this case, the record is devoid of evidence that Scott had any vicious or violent propensities, that he had ever thrown a rider or that he had ever reared, lunged or made any unexpected moves when ridden. To the contrary, the uncontroverted proof is that he had been ridden five times a week, weather permitting, for a period of approximately six months prior to the accident and that he was considered a quiet and well-behaved, if not somewhat lethargic, horse. Plaintiff herself acknowledged that prior to the accident the horse properly responded to all of her signals.

Although Scott's age and training technically placed him in the category of a "green" horse, plaintiff presented herself to defendants as, and she in fact was, an expert horsewoman whose education, training and experience qualified her to ride and train horses of that type. Indeed, Scott was one of the two-year-old thoroughbreds that plaintiff was to have exercised if she had been hired by defendants. The opinion of plaintiff's expert that "it is dangerous and contrary to accepted practices to mount an interviewee on a 'green horse' without first having observed how the interviewee handles a 'dead horse' " (i.e., one that is entirely predictable and docile) not only fails to take into account plaintiff's high level of expertise, but also attempts to impose a duty of care at odds with established New York law (see, Nevins v Great Atl. & Pac. Tea Co., 164 AD2d 807, 809).

Cardona, P. J., Mikoll, White and Yesawich Jr., JJ., concur. Ordered that the order is affirmed, with costs.