[688 NYS2d 55]

Thomas Schwartz et al., Respondents, v Armand Erpf Estate et al., Appellants, et al., Defendant.

First Department, April 13, 1999

## APPEARANCES OF COUNSEL

*James L. Forde* of counsel (*Charles Krupin, P. C.,* attorney), for respondents.

*Danielle M. Regan* of counsel (*Hoey, King, Perez, Toker & Epstein,* attorneys), for appellants.

## OPINION OF THE COURT

Saxe, J.

Over the years, the intersection of animals, people and the law has spawned a tort recovery doctrine known as the rule of vicious propensity (*see, Benoit v Troy & Lansingburgh R. R. Co.,* 154 NY 223, 225; *Brown v Willard,* 303 NY 727). Under this rule, a person who is bitten, clawed, pecked, scratched, or mauled by a domestic animal could obtain monetary recovery only by proving that the domestic animal's owner has prior knowledge of the animal's vicious propensity to cause harm.

In most circumstances, application of the rule of vicious propensity provides a proper balance between society's need to protect innocent parties injured as a result of the activities of domestic animals, and the need to limit the legal responsibility of their owners, imposing responsibility only where the animal's harmful activities have been brought home to its owner's attention. Once that has been proved, a rule of strict liability in tort applies to the owner. Otherwise, the defendant will prevail.

The issue presented to us on this appeal is whether harm caused by animals not known to have vicious propensities is ever compensable under the law of this State.

Here, a young lad of approximately four years of age crawled under an electrified fence surrounding a corral at a horse farm where he and his family were tenants. He was trying to pet one of the horses, a gelding named Chestnut. While Chestnut was walking toward the barn, he kicked the boy in the head, causing severe brain damage, for which his parents commenced a lawsuit against the owners of the horse farm and the owner of the horse.

All defendants moved for summary judgment dismissing the action. Chestnut's owner contended that the horse has never

displayed any vicious propensity; the farm owners contended that there was no evidence in the record that they had knowledge of any such propensity. This appeal is brought solely by the owners of the property (hereinafter landowner defendants), challenging the ruling by the IAS Court which denied summary judgment as to all defendants.

From the facts presented, it appears that plaintiffs would be hard pressed to overcome the barriers to recovery presented by application of the doctrine of vicious propensity. Nevertheless, the particular factual circumstances of this case permit us instead to consider this matter from the vantage point of the common-law principles of negligence. We therefore affirm, agreeing with the IAS Court that the common-law vicious propensity rule does not protect the landowner defendants, because other standards of conduct apply.

In a number of other jurisdictions, the strict liability rule of vicious propensity is viewed as co-existing with certain types of claims alleging negligence in the care and maintenance of an animal that causes damage. For instance, in *Arnold v Laird* (94 Wash 2d 867, 871, 621 P2d 138, 140-141), the court recognized two distinct theories applicable in cases where injury is caused by animals: "First, according to [Restatement (Second) of Torts] section 509, if the dog has known dangerous propensities abnormal to its class, the owner is strictly liable. Second, section 518 provides that if there are no known abnormally dangerous propensities, the owner is liable only if he is negligent in failing to prevent the harm. The amount of care required is commensurate with the character of the animal. Comment (f), § 518." (Citing, *Westberry v Blackwell*, 282 Ore 129, 577 P2d 75; *Nelson v Hansen*, 10 Wis 2d 107, 102 NW2d 251; *Baley v Hink & Son*, 133 Cal App 2d 102, 283 P2d 349.) Under the latter theory of liability, "[t]he type of negligence that exposes an animal owner who is unaware of the animal's dangerous propensities occurs in the failure to control the creature or prevent the harm caused by it" (*Slack v Villari*, 59 Md App 462, 470, 476 A2d 227, 231, *cert denied* 301 Md 177, 482 A2d 502).

Another line of reasoning, pertinent here, would permit liability under Restatement of Torts § 518 to be predicated on "the failure to warn of a dangerous propensity which is normal to the particular class of animal" (*Vigue v Noyes*, 24 Ariz App 144, 147, 536 P2d 713, 716, *vacated in part* 113 Ariz 237, 550 P2d 234). Under this theory, the owner of a horse, or the owner of the property on which it is kept, has a duty to warn a teen-

aged babysitter caring for young children on the premises of normal behavior of the animal, such as the possible tendency of a mare to treat as a threat anyone approaching her newborn colt (*Flynn v Lindenfield*, 6 Ariz App 459, 461, 433 P2d 639, 641).

New York has repeatedly rejected application of a negligence standard when injury was caused by domestic animals; rather, in such cases discussion generally begins and ends with consideration of whether the animal in question was known to have vicious propensities (*see, e.g., Brown v Willard*, 278 App Div 728, *affd* 303 NY 727, *supra*).

Nevertheless, we conclude that in certain limited circumstances, claims of injury caused by animals may be based upon a theory of negligence rather than upon the strict liability resulting from the vicious propensity rule. We begin with the Restatement's suggestion that even where an owner has no knowledge of an animal's dangerous propensities, the owner may be liable for harm done by a domestic animal, *if* the owner "is negligent in failing to prevent the harm" (Restatement [Second] of Torts § 518 [b]).

Of course, in view of this State's broad use of the vicious propensity rule to the exclusion of ordinary negligence claims, a cause of action grounded in negligence may not be based merely upon the failure to prevent the complained-of misbehavior by the animal. The owner of a domestic animal, absent prior indications of a problem, has no particular duty with respect to that animal's behavior toward visitors in the home. Before our courts may consider a negligence claim concerning the behavior of an animal, there must be some other distinct act that the defendant should have done or refrained from doing under the particular circumstances, or some distinct, enhanced duty.

It is instructive to note that in *Brown v Willard* (*supra*), the Court recognized that *some* conduct by domestic animals, particularly horses, may still give rise to a negligence claim. There, the claim was based on conduct of a horse *within its corral*, the plaintiff claiming that the owner of the horse had negligently left it unattended and unhitched. In rejecting the claim, the Court distinguished the case presented from cases in which the owner of a horse was negligent when the horse, uncontrolled, caused damage on a public street (*Brown v Willard*, 278 App Div 728, *supra*). Thus, although the owner of a horse within its corral normally has no duty to ensure that the horse does not injure anyone unless he knows that it has

dangerous propensities, a horse owner *does* have a duty to keep his horses properly corralled or otherwise under control (*see, e.g., Dickson v McCoy*, 39 NY 400, 401; *Furlong v Winne & McKain Co.*, 166 App Div 882, *mot to dismiss appeal granted* 222 NY 643), and the violation of that duty may support a finding of negligence.

The question to be answered, therefore, is whether the law imposes on the landowner defendants, under the circumstances presented, any duty beyond the duty to keep the horse corralled. Here, as the motion court correctly concluded, the allegations support a claim that the landowner defendants breached a duty owed to plaintiffs because a property owner owes an enhanced duty to ensure the safety of a young child living on the premises when he knows that something on the property poses a danger to the child.

Of course, a property owner has the right to use his property as he sees fit. However, if in doing so he creates or permits dangerous activities, instrumentalities, or conditions to exist on the premises, he must take reasonable measures to prevent injury to those whose presence on the property can be reasonably foreseen (*see, Scurti v City of New York*, 40 NY2d 433, 441-442).

When a dangerous condition is apparent, the need to warn is normally obviated (*see, Brzostowski v Coca-Cola Bottling Co.*, 16 AD2d 196, 200-201; Restatement [Second] of Torts § 342, comment *b*). For that reason, there is no need for a horse farm owner to take any special measures to protect adults from the normal conduct of horses. However, dangers obvious to adults are not necessarily obvious to young children (*Brzostowski v Coca-Cola Bottling Co., supra*). The law therefore imposes on landowners a more exacting duty when they are aware that children will be present on the premises: they must take into account children's natural curiosity and their propensity to physically examine novel and interesting things, heedless of the dangers and risks presented (*supra*).

Notwithstanding the landowner defendants' argument that the law treats horses as domestic animals rather than as dangerous instrumentalities, the presence of a horse on property where small children are known to be present constitutes a particular danger to young children, warranting imposition of a further duty to provide protections. We need not ignore the fact that by virtue of their size alone, horses in their normal activities pose a distinct type of threat to small children who are unaware of the hazards they present, distinguishable in

kind from the dangers presented by house pets such as dogs and cats.

In recognizing that horses fascinate many young children, we are not resurrecting, or even referring to, the discredited "attractive nuisance" doctrine, which in any case only applied to *trespassing* children (*see, Morse v Buffalo Tank Corp.*, 280 NY 110, 115). "[T]he rejection of the 'attractive nuisance' doctrine as to trespassing children has no bearing upon the duty owing to a child who is lawfully on the premises" (*Brzostowski v Coca-Cola Bottling Co.*, 16 AD2d 196, 204, *supra*).

Therefore, we hold that when young children are known to be present, the landowner's normal duty, i.e., to maintain its premises in a reasonably safe condition in view of all the circumstances (*see, Basso v Miller,* 40 NY2d 233), includes a duty to recognize the danger created by the presence of horses to which a small child could easily gain access, which danger, although obvious to adults, may not be appreciated by children. This duty may be satisfied in a number of ways: one might involve modifying the dangers presented by altering or adding to the fencing; another might involve appropriately warning the children of the risk (*see, Brzostowski v Coca-Cola Bottling Co., supra*). In this regard, we note that when a young child will not automatically appreciate or understand the nature of the risk, an appropriate warning entails not simply telling the child to stay away, but requires providing a warning of the actual risks (*supra*).

The motion court was therefore correct in concluding that issues of fact were presented as to whether the landowner defendants provided adequate protection for the child, precluding a grant of summary judgment in their favor.

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered June 23, 1998, which denied the landowner defendants' motion for summary judgment, should be affirmed, without costs.

ELLERIN, P. J., RUBIN and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered June 23, 1998, affirmed, without costs.