[712 NYS2d 146]

SUSAN ST. GERMAIN et al., Respondents, v DUTCHESS COUNTY AGRICULTURAL SOCIETY et al., Appellants.

Second Department, August 7, 2000

APPEARANCES OF COUNSEL

*Ahmuty Demers & McManus,* Albertson (*Frederick B. Simpson* and *Brendan T. Fitzpatrick* of counsel), for Dutchess County Agricultural Society, appellant.

*Francis J. Roche,* Hudson, for Jeffrey Pulver and others, appellants.

*Basso & Burke, L. L. P.,* Poughkeepsie (*Kara L. Campbell* of counsel), for respondents.

## OPINION OF THE COURT

FRIEDMANN, J.

In the instant action, the injured plaintiffs allegedly suffered personal injuries when they were trampled by a cow which broke free from its handler and ran amongst fairgoers as it was being led from an exercise area to a barn at the Dutchess County Fair (hereinafter the Fair). At issue on the instant appeal is whether the plaintiffs may recover damages for their injuries from the owners of the cow and/or from operators of the Fair, even though it was demonstrated that the cow did not have vicious propensities. Under the circumstances of the instant case, we determine that they may.

The defendant John Stanley Pulver is the father of the defendants Daniel Pulver and Jeffrey Pulver. Each owns shares of the defendant Pulver Farm, Inc., and John Stanley and Jeffrey are partners in the defendant Pleasant View Farm (where appropriate, these defendants are hereinafter collectively referred to as the Pulvers). The Pulvers primarily raise Holstein cattle, some of which they show each year at the Fair. The defendant Dutchess County Agricultural Society (hereinafter DCAS), of which John Stanley Pulver is a member of the Board of Directors, sponsors the Fair.

In 1995 the Pulvers brought about 20 cattle to the Fair. During the Fair, these cattle were housed in a barn about 60 to 70 feet away from the Fair's livestock show pavilion, where shows involving cattle were held. Cattle being shown at the livestock pavilion were led between the barn and the livestock pavilion on a pathway which connected the two areas. This pathway was also used by fairgoers, and whenever a cow was led between the areas, it was likely that it would be done "with pedestrian traffic very close to it or around it."

On August 22, 1995, Daniel Pulver was leading a heifer, a young female cow which has not yet given birth, from the livestock pavilion back to the barn. At the time, this particular

heifer was about 21 months old, which is not fully mature for a cow. It was between four-and a-half to five feet tall at the shoulders, about eight feet long, and weighed about 1,000 pounds. All were normal measurements for a cow of that age. When Daniel Pulver and the heifer were about 10 to 20 feet away from the barn, the heifer "bolted" from him and ran into a group of people that were in front of the barn. Among this group were the injured plaintiffs Susan St. Germain, her infant son Robert St. Germain, and her father Albert Goebel.

Subsequently, the plaintiffs (the injured plaintiffs as well as Susan St. Germain's husband and Albert Goebel's wife) brought the instant negligence action against DCAS and the Pulvers to recover damages, *inter alia,* for their personal injuries. In their respective answers, the Pulvers and DCAS denied the allegations of negligence and asserted cross claims against each other.

Following discovery, the Pulvers moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against them on the ground, *inter alia,* of a "lack of a pre-existing vicious propensity on the part of the heifer and the lack of any knowledge thereof on the part of the [Pulvers]." In support of their motion, the Pulvers submitted, *inter alia,* evidence which established that the particular heifer at issue did not have any known vicious propensities. In response, DCAS separately moved for summary judgment dismissing the complaint and cross claim insofar as asserted against it on the same grounds as the Pulvers' motion.

In opposition to the motions, the plaintiffs asserted that the liability of the Pulvers and DCAS was not based upon any vicious propensities of the heifer, but rather, upon common-law negligence principles. More specifically, the plaintiffs argued that the Pulvers were negligent in their handling of the heifer at the Fair, and that DCAS, as owner and coordinator of the Fair, owed a reasonable duty to those who came onto its premises.

With their opposition papers, the plaintiffs submitted, *inter alia,* the affidavit of their expert witness, Russell G. Kenny, Jr., who explained that a heifer "generally is more nervous, excitable and prone to being further frightened (spooked) and to break away" from its handler; that it is "well known and foreseeable that heifers of this type, particularly young heifers, have a tendency to spook and 'bolt' under circumstances similar to those encountered at" the Fair; and that the heifer involved in the incident at issue need not have been involved

in a similar type of incident in the past to put its handlers on notice of the potential for such behavior under the circumstances that existed at the Fair. According to Kenny, the heifer's handler should have used a different pathway at different times to more effectively isolate the heifer from fairgoers. With respect to DCAS, Kenny stated that it should have planned and coordinated "transport routes and times for these animals in order to avoid pedestrian traffic and the potential for injury."

The plaintiffs also submitted portions of the deposition testimony of Jeffrey Pulver. He admitted that sudden noise or movement could cause a Holstein heifer to become excited and flee. During his deposition John Stanley Pulver acknowledged the potential for a cow to bolt from its handler when it is walking along a pedestrian walkway at the Fair because "you never know what people are going to do." Particularly, he stated that people can do things, such as touching the cow, to "spook" it or cause it to become nervous.

Although it initially granted the motions of the Pulvers and DCAS for summary judgment, upon the plaintiffs' motion for reargument, the court recalled and vacated its prior order and, upon reargument, denied the motions. In short, the court concluded that the instant case presents a "limited circumstance wherein 'claims of injury caused by animals may be based upon a theory of negligence rather than upon the strict liability resulting from the vicious propensity rule' (*Schwartz v Erpf Estate* [255 AD2d 35]) such as to, at the very least, warrant the denial of the motions for summary judgment." On the separate appeals by the Pulvers and DCAS, we affirm the order.

In support of their motion for summary judgment, the Pulvers sufficiently established a prima facie case that the particular heifer involved in the instant case, which is by definition a domestic animal (*see*, Agriculture and Markets Law § 108 [7]), did not have any vicious propensities, and therefore, that the plaintiffs could not recover in *strict liability* for their alleged injuries (*see, Lebron v New York City Hous. Auth.*, 268 AD2d 563; *Lugo v Angle of Green*, 268 AD2d 567; *Luts v Weeks*, 268 AD2d 568; *Powell v Wohlleben*, 256 AD2d 396). The plaintiffs, however, do not seek to impose strict liability on the defendants for their alleged injuries. Rather, they seek to recover under common-law negligence principles.

The plaintiffs sufficiently demonstrated that a triable issue of fact exists as to whether the defendants were negligent in

failing to prevent the harm allegedly caused by the Pulvers' heifer. Specifically, the Pulvers walked this heifer, which weighed about 1,000 pounds, along the same path used by fairgoers when they knew or should have known that heifers are generally at risk to be "spooked" and bolt from their handler. Under such circumstances, "[i]t is not necessary that a [cow] should be vicious to make the owner responsible for injury done by [it] through the owner's negligence" (*Dickson v McCoy*, 39 NY 400, 401; *cf., Luts v Weeks, supra*). Thus, the Pulvers, as owners of the heifer, are not entitled to summary judgment dismissing the complaint and cross claim insofar as asserted against them.

Similarly, DCAS was not entitled to summary judgment. As the owner and operator of the Fair, DCAS had a duty to keep the premises in a reasonably safe condition for those whose presence on the premises was reasonably foreseeable (*see, Schwartz v Erpf Estate, supra,* at 39; *see generally, Basso v Miller,* 40 NY2d 233). In light of the allegedly well-known danger posed by heifers walking amongst people, a triable issue of fact exists as to whether DCAS should have taken any precautions to prevent or minimize the contact between fairgoers and such heifers.

Accordingly, the order is affirmed.

O'BRIEN, J. P., S. MILLER and SMITH, JJ., concur.

Ordered that the order is affirmed, with costs.