OPINION OF THE COURT
Robert J. Lunn, J.
This case asks this court to decide the following question: Whether limited circumstances exist to support a negligence claim where a person is injured by a domestic animal and there is no proof of the animal’s vicious propensities.
On August 19, 2000, Daniel Doyle, the seven-year-old infant plaintiff in this action, attended a picnic at Mendon Ponds Park with his mother. The picnic was sponsored by defendant Monroe County Deputy Sheriff’s Association. As in previous years, defendant Sandy Neumann brought some animals to the *359 picnic for a petting zoo. For this particular picnic, in order to entertain the children attending the picnic, Sandy Neumann brought some goats and two ponies, Pippin and Tomarra. Both ponies had been extensively trained to be children’s ponies. They were very comfortable being around lots of children. In fact, defendant Neumann testified that, prior to this picnic, Pippin and Tomarra had been in direct contact with over 3,000 children. Ms. Neumann also brought three children to the picnic, Sarah, a 4-H club member, and her two brothers, Josh and Jacob. Ms. Neumann testified at her deposition that none of the children were brought to the picnic specifically to help her unload the animals.
When defendant Neumann started to unload the animals from the truck and trailer, plaintiff Daniel Doyle and his friend Matt were playing ball nearby. As the goats were first unloaded from the pickup truck, plaintiff Daniel and his friend Matt came closer to the truck. They were asked if they wanted to pet the goats. They replied yes, and proceeded to pet the goats. Just prior to beginning to unload the ponies from the trailer, Ms. Neumann told the boys to move away from the back of the trailer. They moved about 15 feet to the right or passenger side of the trailer. She then backed Pippen down the trailer ramp and handed the pony’s lead to Sarah to hold onto while she proceeded to unload the second pony. Ms. Neumann then went back up the ramp into the trailer and backed Tomarra down and out of the trailer. She handed Tomarra’s lead rope to Jacob. She then turned back to the trailer ramp and bent down to pick up the ramp to close it. Out of the corner of her eye, she saw Tomarra move forward. She then looked around and saw Daniel Doyle lying on the ground with his right leg bent saying his leg hurt. He told her that one of the horses had kicked him.
Daniel testified that his friend Matt had moved behind Tomarra. He thought the grey pony was about to kick Matt. Daniel stated that he dove to push Matt out of the way and in the process was allegedly kicked by the pony.
Plaintiff has also submitted an affidavit of an expert horse handler who offered the opinion that defendant Neumann was negligent in not having another experienced horse handler with her to assist in unloading the ponies given the known propensity of horses to kick or run when startled from the rear.
Plaintiffs commenced this action asserting two causes of action on behalf of Daniel. One for strict liability based upon the known vicious propensities of the pony. The second cause of ac *360 tion was for common-law negligence. Defendants now move for summary judgment dismissing the complaint on the basis that there is no proof that Tomarra had ever kicked anyone previously or otherwise demonstrated any vicious propensities. Plaintiff did not oppose granting summary judgment to defendant Monroe County Deputy Sheriff’s Association dismissing the complaint as to it.
Generally, since a horse is a domestic animal, a horse owner is not liable for injuries caused by the animal unless he or she knew or should have known of its vicious or violent propensities (see Wardrop v Koerner, 208 AD2d 1147 [3d Dept 1994]; Landes v H.E. Farms, 169 AD2d 446 [1st Dept 1991]). Plaintiff concedes that there is no proof showing any vicious or violent propensities of Tomarra. Accordingly, plaintiffs’ first cause of action is dismissed.
New York courts have slowly begun to allow recovery for injuries caused by domestic animals on a theory of negligence. The two leading cases in this regard, relied upon by plaintiff in arguing that a triable issue of fact exists as to defendant Neumann’s negligence, are Schwartz v Erpf Estate (255 AD2d 35), decided by the First Department in 1999, and St. Germain v Dutchess County Agric. Socy. (274 AD2d 146), a 2000 Second Department decision. The legal basis for these decisions stems from section 518 of the Restatement (Second) of Torts which states, “one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if * * * (b) he is negligent in failing to prevent the harm” (Schwartz v Erpf Estate, 255 AD2d 35, 38 [1999]; see also Loder v State of New York, 200 AD2d 925, 927 [3d Dept 1994]).
Schwartz involved a four-year-old child who crawled under a horse corral fence and was kicked in the head by a horse with no known vicious propensities. The First Department held that in the limited circumstances “when young children are known to be present, the landowner’s normal duty, i.e., to maintain its premises in a reasonably safe condition in view of all the circumstances * * *, includes a duty to recognize the danger created by the presence of horses to which a small child could easily gain access, which danger, although obvious to adults, may not be appreciated by children.” (Schwartz v Erpf Estate, 255 AD2d at 40.) The appellate court found this to be an enhanced duty of a property owner “to ensure the safety of a young child living on the premises when he knows that something on the property poses a danger to the child.” (Schwartz at 39.) This *361 enhanced duty arose because “the presence of a horse on property where small children are known to be present constitutes a particular danger to young children, warranting imposition of a further duty to provide protections. We need not ignore the fact that by virtue of their size alone, horses in their normal activities pose a distinct type of threat to small children who are unaware of the hazards they present, distinguishable in kind from the dangers presented by house pets such as dogs and cats.” (Schwartz at 39-40.)
Defendant argues that Schwartz is an aberration, has not been followed by any other court and should be limited only to landowner defendants. However, the Second Department does not share this view. In St. Germain v Dutchess County Agric. Socy. (274 AD2d 146 [2000]), the Second Department, citing Schwartz, expanded the negligence theory of liability for animal owners to include not only property owners but also animal handlers. St. Germain dealt with a negligence claim by plaintiffs who were trampled by a cow, with no known vicious propensities, which broke free from its handler and ran amongst fair goers as it was being led from an exercise area to a barn at the Dutchess County Fair. The Second Department found that the animal owners and handlers “were negligent in failing to prevent the harm allegedly caused by the Pulvers’ heifer. Specifically, the [defendants] walked this heifer, which weighed about 1,000 pounds, along the same path used by fair goers when they knew or should have known that heifers are generally at risk to be ‘spooked’ and bolt from their handler.” (St. Germain v Dutchess County Agric. Socy., 274 AD2d 146, 149-150.) In finding a triable issue of fact precluding summary judgment to defendants, the Second Department held that “[i]t is not necessary that a [cow] should be vicious to make the owner responsible for injury done by [it] through the owner’s negligence” (St. Germain v Dutchess County Agric. Socy., 274 AD2d 146, 150, quoting Dickson v McCoy, 39 NY 400, 401 [1868]).
Here, as in Schwartz, the presence of young children was clearly foreseeable. In fact, as defendant was in the process of setting up a petting zoo, the presence of young children was encouraged. Defendant Neumann specifically was aware of the presence of the infant plaintiff and his friend in the same area where she chose to unload the ponies. Additionally, defendant acknowledged at her deposition the danger inherent in standing behind a horse. In doing so, defendant also tacitly acknowledged the natural tendency of a horse to kick when *362 startled from the rear. A tendency which was established by plaintiffs expert horse handler. In light of the unique facts of this case, this court holds that defendant was subject to the enhanced duty of horse owners to young children established in Schwartz v Erpf Estate (255 AD2d 35 [1999]). Plaintiff has raised triable issues of fact as to whether defendant Neumann was negligent in the manner in which the ponies were unloaded while in the presence of young children. Stated otherwise, questions of fact exist as to whether Ms. Neumann failed to take adequate precautions to prevent plaintiffs injuries.
This court is aware of the Fourth Department’s decision in Plennert v Abel (269 AD2d 796 [4th Dept 2000]) wherein that appellate court declined to allow plaintiffs negligence cause of action. However, that case did not involve a horse owner’s duty of care when the presence of young children was foreseeable. Plennert dealt with the more common situation of the duty of a dog owner whose animal had no known vicious propensities who attacked an adult. As quoted previously, the Second Department appreciated the difference as “horses in their normal activities pose a distinct type of threat to small children who are unaware of the hazards they present, distinguishable in kind from the dangers presented by house pets such as dogs and cats.” (Schwartz v Erpf Estate, 255 AD2d at 39-40.) Defendant Monroe County Deputy Sheriffs Association, Inc.’s motion for summary judgment is granted. Defendant Sandy Neumann’s motion for summary judgment is denied.