Fahey, J.
(dissenting) In 2006, in Bard v Jahnke (6 NY3d 592 [2006]), this Court revised tort law in New York by holding that injuries caused by a domestic animal are not actionable on a negligence theory. I believe that Bard was wrongly decided and I would overrule it. In departing from a recent precedent it is important to answer the question: why change? Bard conflicts with prior, more coherent and sound doctrine. It invites many questions, and has provoked a demand for the creation of ad hoc exceptions, making a compelling justification for overruling it. I would take that step now and declare that the decision should no longer be followed. We should return to the basic principle that the owner of an animal may be liable for failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation. I *1143 cannot join the Court’s memorandum opinion and I disagree with the analysis put forward in the concurring opinion (see concurring op of Abdus-Salaam, J.). Accordingly, I dissent.
L
Before Bard was decided, our Court’s decisions were consistent with the rule, set out in the Restatement (Second) of Torts § 518, that a plaintiff whose injuries were caused by a domestic animal may bring a negligence claim against the owner, as an alternative to an allegation that the owner is strictly liable.
Our precedents are illuminating. In Hyland v Cobb (252 NY 325 [1929]), we stated that “negligence by an owner, even without knowledge concerning a domestic animal’s [dangerous] propensity, may create liability” (Hyland, 252 NY at 326-327, citing Dickson v McCoy, 39 NY 400 [1868]). The Restatement principle, similarly, is that “one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if . . . he is negligent in failing to prevent the harm” (Restatement [Second] of Torts § 518 [b] [1977]).[1]
*1144 In Dickson, decided in 1868, the defendant’s horse, which was allowed to roam on a public street, kicked a 10-year-old child in the face. The horse was young and playful, rather than vicious in nature, but this Court deemed an allegation of harmful propensities to be unnecessary (see Dickson, 39 NY at 401) and affirmed the trial court’s judgment premised on a negligence-based jury verdict in the plaintiff’s favor (see id. at 403). This Court continued to assume that injuries caused by a domestic animal are actionable on a negligence theory in subsequent decisions including Unger v Forty-Second St. & Grand St. Ferry R.R. Co. (51 NY 497, 500 [1873] [noting that “(a) person driving horses through a street ... is bound to exercise that reasonable degree of diligence and care which a man of ordinary prudence and capacity might be expected to exercise under the same circumstances”]); Hyland (252 NY at 326-327); and more recently, Young v Wyman (76 NY2d 1009, 1010 [1990] [holding that “the mere presence of an unrestrained dog on the street does not give rise to a presumption of negligence on the part of its owner” but not questioning the propriety of a negligence cause of action when based on sound evidence]).
In Collier v Zambito (1 NY3d 444 [2004]), defendants’ dog bit a 12-year-old guest in defendants’ home. The plaintiff did not assert negligence liability, but rather that defendants knew or should have known of the dog’s vicious propensities. This Court noted that a domestic animal that “reflects a proclivity to act in a way that puts others at risk of harm, can be found to have vicious propensities” even if its prior behavior “would not necessarily be considered dangerous or ferocious” (id. at 447), but held that plaintiff Collier did not raise an issue of fact concerning the defendants’ knowledge of the animal’s harmful propensities (see id. at 447-448). The Court had no occasion in Collier to consider whether an owner who does not know his or her animal’s harmful propensities can be liable for negligence.
At the time Bard was decided, three of the Departments of the Appellate Division recognized that a negligence claim for animal-induced injuries could be brought as an alternative to a strict liability claim.
The First Department held that “in certain limited circumstances, claims of injury caused by animals may be based upon a theory of negligence rather than upon the strict liability *1145 resulting from the vicious propensity rule” (Schwartz v Armand Erpf Estate, 255 AD2d 35, 38 [1st Dept 1999], lv dismissed 94 NY2d 796 [1999]), noting that “[i]n a number of other jurisdictions, the strict liability rule of vicious propensity is viewed as co-existing with certain types of claims alleging negligence in the care and maintenance of an animal that causes damage” (id. at 37). The Schwartz Court held that
“when young children are known to be present, the landowner’s normal duty, i.e., to maintain its premises in a reasonably safe condition in view of all the circumstances, includes a duty to recognize the danger created by the presence of horses to which a small child could easily gain access, which danger, although obvious to adults, may not be appreciated by children. This duty may be satisfied in a number of ways: one might involve modifying the dangers presented by altering or adding to the fencing; another might involve appropriately warning the children of the risk” (Schwartz, 255 AD2d at 40 [citation omitted]).
The Second Department assumed the existence of negligence claims for animal-induced injuries in St. Germain v Dutchess County Agric. Socy. (274 AD2d 146 [2d Dept 2000]), holding that the plaintiffs demonstrated a triable issue of fact as to negligence, when the defendants walked a 1,000-pound heifer, not known to have vicious propensities, “along the same path used by fairgoers when they knew or should have known that heifers are generally at risk to be ‘spooked’ and bolt from their handler” (St. Germain, 274 AD2d at 149-150). Similarly, in Colarusso v Dunne (286 AD2d 37 [2d Dept 2001]), the Second Department cited our decision in Hyland for the proposition that “where the conduct at issue, although not vicious, results in reasonably-foreseeable injury, the courts have recognized a right to recover for common-law negligence” (Colarusso, 286 AD2d at 39). In Colarusso, a three-year-old child hugged a dog owned by the child’s day-care provider, and the dog bit the child just as the provider was calling out to him to leave the dog alone. The Second Department held that a jury might charge
“[t]he defendants, as providers of day care services . . . with the knowledge that a young child such as the plaintiff may interact with a dog in a fearless manner that befits a child’s lack of capacity to fully *1146 understand the foreseeable consequences of such conduct; that is, that such conduct may be injurious or threatening to the dog and, if so, that the dog, even a docile and well-trained one, may instinctively engage in defensive action such as biting” (id. at 40).
The Third Department, similarly, “recognized that, in some circumstances, a plaintiff who sustains injury due to the conduct of an unrestrained dog may pursue a negligence claim predicated on a defendant’s failure to comply with a local animal control ordinance” (McKee v J&J Otsego Props., 277 AD2d 787, 788 [3d Dept 2000], lv denied 96 NY2d 705 [2001], citing Clo v McDermott, 239 AD2d 4, 6 [3d Dept 1998]; see Lecznar v Sanford, 265 AD2d 728, 729 [3d Dept 1999]; Sorel v Iacobucci, 221 AD2d 852 [3d Dept 1995]). Clo is representative. There, the plaintiff was riding a bicycle along a public road when the defendants’ dog ran out in front of him, striking the bicycle and injuring the plaintiff. The Third Department ruled that a triable issue of fact existed “as to whether defendants violated the Town’s animal control ordinance” and whether any such violation “constitute [d] some evidence of defendants’ negligence” (Clo, 239 AD2d at 6). As the Third Department later summarized its position, there are exceptions “under certain limited circumstances” to the rule that “absent a showing of vicious propensities, a plaintiff may not recover for injuries sustained in an attack by a dog” (Shaw v Burgess, 303 AD2d 857, 859 [3d Dept 2003]).
At the time Bard was decided, only the Fourth Department adhered to a rigid rule that liability for animal-induced injuries “is not dependent upon proof of negligence in the manner of keeping or confining the animal, but is predicated upon the owner’s keeping of the animal, despite his [or her] knowledge of the animal’s vicious propensities” (Plennert v Abel, 269 AD2d 796, 796 [4th Dept 2000]; see Smith v Farner, 229 AD2d 1017, 1018 [4th Dept 1996]). Yet even the Fourth Department had not consistently rejected negligence claims in connection with domestic animals (see e.g. Laylon v Shaver, 187 AD2d 983 [4th Dept 1992]).
Based on the cases summarized above, the law in New York, before Bard was decided, may be distilled as follows. If you were injured by a dog and you believed the owner had been negligent in the manner he or she trained, restrained, or otherwise kept the dog, you could bring a cause of action in *1147 negligence, in addition to a strict liability claim. If you could prove that the owner had reason to believe the dog, as an individual animal, had harmful propensities, you could prevail on the strict liability theory, without having to show negligence. However, where there was no evidence that the owner knew or should have known of the dog’s harmful propensities but the owner’s failure to restrain the dog breached a duty of care to a foreseeable plaintiff, you could, instead, prevail on a negligence theory. Such a duty of care would exist, for example, when a reasonably prudent person would recognize a duty to a person (whether a child, a fairgoer, or a bicyclist) who is likely not to appreciate, or not to be able to avoid, a particular risk posed by an animal. The law in New York was consistent with the Restatement (Second) of Torts § 518.
IL
As the Supreme Court of Connecticut recently noted, “a large majority of the jurisdictions that have considered the issue have adopted the approach . . . taken by § 518 of the Restatement (Second) of Torts” (Vendrella v Astriab Family Ltd. Partnership, 311 Conn 301, 326-327, 87 A3d 546, 562 [2014]; see 311 Conn at 327 n 22, 87 A3d at 562 n 22). The Connecticut court cited Humphries v Rice (600 So 2d 975, 978 [Ala 1992]); Vigue v Noyes (113 Ariz 237, 240, 550 P2d 234, 237 [1976]); Van Houten v Pritchard (315 Ark 688, 692, 870 SW2d 377, 379-380 [1994]); Drake v Dean (15 Cal App 4th 915, 929, 19 Cal Rptr 2d 325, 334 [1993]); Taft v Taft (209 Ga App 499, 500, 433 SE2d 667, 668 [1993]); Farrior v Payton (57 Haw 620, 630, 562 P2d 779, 786 [1977]); Ross v Lowe (619 NE2d 911, 914 [Ind 1993]); Gardner v Koenig (188 Kan 135, 138, 360 P2d 1107, 1109 [1961]); Baker v McIntosh (132 SW3d 230, 232 [Ky Ct App 2004]); Moura v Randall (119 Md App 632, 646, 705 A2d 334, 341 [1998], cert denied 349 Md 495, 709 A2d 140 [1998]); Trager v Thor (445 Mich 95, 104-105, 516 NW2d 69, 75 [1994]); Duren v Kunkel (814 SW2d 935, 938-939 [Mo 1991]); Huber v Timmons (184 Neb 718, 722, 171 NW2d 794, 797 [1969]); De-Robertis by DeRobertis v Randazzo (94 NJ 144, 156, 462 A2d 1260, 1266 [1983]); Smith v Village of Ruidoso (128 NM 470, 477, 994 P2d 50, 57 [Ct App 1999]); Griner v Smith (43 NC App 400, 407, 259 SE2d 383, 388 [1979]); Westberry v Blackwell (282 Or 129, 133, 577 P2d 75, 76 [1978]); Sybesma v Sybesma (534 NW2d 355, 358 [SD 1995]); Dunnings v Castro (881 SW2d 559, 563 [Tex Ct App 1994]); Arnold v Laird (94 Wash 2d 867, 871, 621 P2d 138, 140-141 [1980]); Jividen v Law (194 W Va *1148 705, 712, 461 SE2d 451, 458 [1995]); Nelson v Hansen (10 Wis 2d 107, 113-114, 102 NW2d 251, 255 [I960]); and Borns ex rel. Gannon v Voss (70 P3d 262, 270 [Wyo 2003]).[2]
The Connecticut Supreme Court adopted the Restatement position and held, as a matter of first impression, that
“ ‘one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if . . . he is negligent in failing to prevent the harm’ . . . regardless of whether the animal was roaming at large” (Vendrella, 311 Conn at 328, 87 A3d at 563, quoting Restatement [Second] of Torts § 518 [b]).
The court reasoned that “ [t] o conclude otherwise would undermine the policy considerations governing our tort system which include compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct” (Vendrella, 311 Conn at 328, 87 A3d at 563 [internal quotation marks, brackets and ellipses omitted]).
To the Connecticut Supreme Court’s lengthy catalog of decisions recognizing negligence actions for animal-induced injuries, as listed above, I would add the following rulings: Swerdfeger v Krueger (145 Colo 180, 183-184, 358 P2d 479, 481 [1960]); Richmond v Knowles (265 A2d 53, 55 [Del Super Ct 1970]); Jackman v Hamersley (72 Idaho 301, 302-303, 240 P2d 829, 830-831 [1952]); Whitcanock v Nelson (81 Ill App 3d 186, 191-192, 400 NE2d 998, 1002 [1980], overruled on other grounds, as stated in People v Lyles, 217 Ill 2d 210, 217, 840 NE2d 1187, 1192 [2005]); Klobnak v Wildwood Hills, Inc. (688 NW2d 799, 801-803 [Iowa 2004]); Henry v Brown (495 A2d 324, 327 [Me 1985]); Saldi v Brighton Stock Yard Co. (344 Mass 89, 181 NE2d 687 [1962]); Ryman v Alt (266 NW2d 504, 508 [Minn 1978]); Ladnier v Hester (98 So 3d 1025, 1028-1029 [Miss 2012]); Hansen v Brogan (145 Mont 224, 228-230, 400 P2d 265, 267-268 [1965]); Sendelbach v Grad (246 NW2d 496, 501 [ND 1976]); and Stout v Bartholomew (261 Va 547, 556-558, 544 SE2d 653, 658-659 [2001]). In all, some 36 states expressly recognize negligence as a distinct, alternative theory for animal-induced injuries, of which 18 expressly adopt or approvingly *1149 cite the Restatement (Second) of Torts § 518. Other than New York, none of the remaining 14 states has expressly rejected the Restatement approach. When Bard was published, New York became “ ‘the only state in the nation that rejects the rule set forth in the Restatement [Second] of Torts’ regarding an owner’s negligence as a ground for liability arising from the dangerous acts of animals” (Bloomer v Shauger, 94 AD3d 1273, 1277 [3d Dept 2012, Garry, J., dissenting], affd 21 NY3d 917 [2013], quoting Marc Miner, Outside Counsel, When Animals Attack In New York, NYLJ, Feb. 28, 2012 at 4, col 1).
This review of the law of other jurisdictions identifies New York as a unique outlier in its rejection of the Restatement (Second) of Torts § 518.
m.
In Bard, the plaintiff was injured by a bull that was permitted to roam freely around a dairy barn in order to impregnate cows. The defendant farm owner, Jahnke, had not mentioned the bull’s presence to plaintiff Bard, a carpenter who was doing repairs in the barn. Bard submitted the affidavit of an animal science expert, who opined that “bulls, in particular breeding bulls, are generally dangerous and vicious animals,” and that the farm owner should have either restrained the bull or warned Bard of its presence (Bard, 6 NY3d at 596). However, the bull himself had concededly never before threatened or injured any farm animal or any human being. The Court first held that Bard could not recover under strict liability because the bull “had never acted in a way that put others at risk of harm” (Bard, 6 NY3d at 597, citing Collier, 1 NY3d at 447).
Then the Court considered plaintiff Bard’s alternative theory, premised on negligence, that, because the animal was a breeding bull housed with a herd over which he exercised dominance, Jahnke was negligent in failing to restrain the bull or warn strangers of his presence. Plaintiff Bard had relied on the Restatement (Second) of Torts § 518. More particularly, Bard had relied on two comments in this section of the Restatement. The first, “Knowledge of normal characteristics,” notes that “ [i]n determining the care that the keeper of a not abnormally dangerous domestic animal is required to exercise to keep it under control, the characteristics that are normal to its class are decisive, and one who keeps the animal is required to know the characteristics” (Restatement [Second] of Torts § 518, Comment g). The second, “Animals dangerous under particular cir *1150 cumstances,” provides that one who keeps a domestic animal is “required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm” (Restatement [Second] of Torts § 518, Comment h).
The Court rejected Bard’s reliance on the comments to the Restatement, on the ground that his theory was “no different from arguing that Jahnke was negligent in that he should have known of Fred’s vicious propensities” (Bard, 6 NY3d at 598-599). The Court observed that it had never accepted such a theory of imputed or constructive knowledge of vicious propensity:
“We have never . . . held that particular breeds or kinds of domestic animals are dangerous, and therefore when an individual animal of the breed or kind causes harm, its owner is charged with knowledge of vicious propensities. Similarly, we have never held that male domestic animals kept for breeding or female domestic animals caring for their young are dangerous as a class” {id. at 599).
Finally, the Court concluded the Bard decision by writing: “In sum, when harm is caused by a domestic animal, its owner’s liability is determined solely by application of the rule articulated in Collier” {id.).
The Collier rule, quoted earlier in the Bard opinion, is “that the owner of a domestic animal who either knows or should have known of that animal’s vicious propensities will be held liable for the harm the animal causes as a result of those propensities” (id. at 596-597, quoting Collier, 1 NY3d at 446). Taken in context, a reader would naturally interpret the concluding sentence of Bard to mean that if a plaintiff alleges that a defendant either knew or should have known of his or her domestic animal’s harmful propensities, the plaintiff must show the defendant’s knowledge of the individual animal’s harmful propensities, not merely the dangerous propensities of its breed or class. On this view, the Court was simply rejecting Bard’s appeal to the Restatement (Second) of Torts § 518, Comments g and h, and their theory of imputed knowledge. However, it is clear that the Bard Court intended a much more restrictive meaning. As the dissenting Judges saw it, the majority adopted the rule “that the strict liability involved in Collier is the only kind of liability the owner of a domestic animal may face — that, in other words, there is no such thing as *1151 negligence liability where harm done by domestic animals is concerned” (Bard, 6 NY3d at 601 [R.S. Smith, J., dissenting] [emphasis added]). That is the legacy of the Bard decision. The Bard Court reached this significant transformation of the law without any discussion of policy ramifications or history of prior, apposite jurisprudence. Bard cited only Collier, a decision that did not mention a common-law negligence cause of action because the plaintiff had not asserted one.

m

Less than two years later, the Court reiterated that “[i]n Bard v Jahnke . . . , we held that ‘when harm is caused by a domestic animal, its owner’s liability is determined solely by application of the rule articulated in Collier’ ” (Bernstein v Penny Whistle Toys, Inc., 10 NY3d 787, 788 [2008], quoting Bard, 6 NY3d at 599). In Bernstein, the eight-year-old plaintiff visited a toy store and went over to pet the defendant owner’s dog. The defendant told the child’s adult caregiver that the dog was friendly, and the child scratched the dog behind his ear, patted his back, hugged him, and kissed him. Suddenly, the dog growled and bit the child’s right cheek, once, causing disfiguring injury. The Bernstein plaintiffs conceded that there was no evidence of vicious propensities on the dog’s part, but contended that the defendants owed an enhanced duty toward the eight-year-old plaintiff because the presence and actions of children on the toy store premises was reasonably foreseeable. This Court upheld the dismissal of the complaint in a terse memorandum opinion, casting the plaintiffs’ negligence cause of action aside entirely, on the basis that Bard proscribed such claims, and dismissing the complaint because there was no evidence that the dog’s “owner had any knowledge of its vicious propensities” (Bernstein, 10 NY3d at 788).
It is a measure of the degree to which this Court’s holding in Bard was questioned that, even after Bernstein, the Appellate Division could not bring itself to accept that Bard stood for the proposition “that a defendant’s prior notice of ‘vicious propensities’ is an absolute sine qua non to civil liability in all actions involving personal injuries caused by domestic animals” (Petrone v Fernandez, 53 AD3d 221, 228 [2d Dept 2008]). In Petrone, the plaintiff, a mail carrier, was on a public street, approaching a house to deliver the mail, when she noticed a rottweiler lying on the lawn of the unfenced property. The dog was not restrained in any way. As she was walking back to her car, *1152 the plaintiff turned to look at the dog and saw that it was running toward her. She began to flee, and was injured as she threw herself into her vehicle through an open window. Plaintiff Petrone brought a common-law negligence claim, alleging that the defendant owner violated New York City Health Code (24 RCNY) § 161.05 (a) (requiring dog owners to restrain dogs in public places) and as a result was negligent in allowing the rottweiler to chase the plaintiff on a public street. The Appellate Division declined to apply Bard, noting that Bard and Collier were not concerned with, “and did not need to address, the question of whether negligence involving the violation of a leash law can result in liability when an unleashed dog engages in a chase that proximately causes injury” (Petrone, 53 AD3d at 228). The Appellate Division reinstated the plaintiff’s common-law negligence claim, holding that the owner of a dog may be liable in negligence based on violation of a local leash law, in a case where strict liability based on vicious propensities is not alleged.
This Court reversed in Petrone, invoking the Bard dissent’s description of the Bard rule as being “that the strict liability involved in Collier is the only kind of liability the owner of a domestic animal may face — that, in other words, there is no such thing as negligence liability where harm done by domestic animals is concerned” (Petrone v Fernandez, 12 NY3d 546, 550 [2009], quoting Bard, 6 NY3d at 601 [R.S. Smith, J., dissenting]). Like Bard and Bernstein, Petrone is devoid of analysis of any policy grounds or prior precedents supporting Bard’s revision of the law. Also striking is that two Judges of this Court believed strongly enough that Bard had been wrongly decided that the one wrote, and the other joined, a concurring opinion, emphasizing that they were constrained by Bard’s holding but vigorously disagreed with it (see Petrone, 12 NY3d at 551-552 [Pigott, J., concurring]).
More recently, this Court reviewed a case that tested the limits of its restrictive holding on actions alleging negligence by an animal owner. In Hastings v Sauve (21 NY3d 122 [2013]), plaintiff Hastings was driving on a rural road in Franklin County when she struck a cow, which had strayed from a pasture, owned by defendant Sauve, immediately adjacent to the road. The pasture was surrounded by a wire fence that was in disrepair. Hastings alleged that Sauve was negligent in failing to control the cow and allowing it to enter the roadway. The Appellate Division upheld Supreme Court’s dismissal of *1153 the plaintiff’s complaint against Sauve and another defendant, but expressed its discomfort with Bard at length.
“While we are obligated to affirm Supreme Court’s dismissal . . . , we must note our discomfort with this rule of law as it applies to these facts — and with this result. There can be no doubt that the owner of a large animal such as a cow or a horse assumes a very different set of responsibilities in terms of the animal’s care and maintenance than are normally undertaken by someone who owns a household pet. The need to maintain control over such a large animal is obvious, and the risk that exists if it is allowed to roam unattended onto a public street is self-evident and not created because the animal has a vicious or abnormal propensity. Here, plaintiff was injured not because the cow was vicious or abnormal, but because defendants allegedly failed to keep it confined on farm property and, instead, allowed it to wander unattended onto the adjacent highway in the middle of the night, causing this accident. The existence of any abnormal or vicious propensity played no role in this accident, yet, under the law as it now exists, defendants’ legal responsibility for what happened is totally dependent upon it. For this reason, we believe in this limited circumstance, traditional rules of negligence should apply to determine the legal responsibility of the animal’s owner for damages it may have caused. However, it is not for this Court to alter this rule and, while it is in place, we are obligated to enforce it.” (Hastings v Sauve, 94 AD3d 1171, 1173 [3d Dept 2012].)
This Court reversed, holding that Bard “does not bar a suit for negligence when a farm animal has been allowed to stray from the property where it is kept” (Hastings, 21 NY3d at 124). The difference, the Court now suggested, is that Bard and its progeny had “involve [d] aggressive or threatening behavior by an[ ] animal,” whereas Hastings involved a claim “that a farm animal was permitted to wander off the property where it was kept through . . . negligence” (id. at 125).
“To apply the rule of Bard — that ‘when harm is caused by a domestic animal, its owner’s liability is determined solely’ by the vicious propensity *1154 rule — in a case like this would be to immunize defendants who take little or no care to keep their livestock out of the roadway or off of other people’s property” (id., quoting Bard, 6 NY3d at 599 [citation omitted]).
In other words, the Court of Appeals now held that when the Bard Court used the word “solely,” it did not mean “solely,” and the Court created an ad hoc exception to Bard, for farm animals that stray. The prediction of the Bard dissenters that the decision had created “an archaic, rigid rule, contrary to fairness and common sense, that will probably be eroded by ad hoc exceptions” (Bard, 6 NY3d at 599 [R.S. Smith, J., dissenting]) had come true.
V.
“It is well settled that ‘[s]tare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process’ ” (People v Taylor, 9 NY3d 129, 148 [2007], quoting Payne v Tennessee, 501 US 808, 827 [1991]). I have no quarrel with the statement that the mission of a high court would be undermined if judges “cast aside or chip away at those rulings with which they simply disagree” (concurring op at 1138). But there is much more to my rationale for dissent here than mere disagreement. A decision may be overruled, no matter how recent or how long-lived, “when there is a compelling justification for doing so” (People v Peque, 22 NY3d 168, 194 [2013], quoting People v Lopez, 16 NY3d 375, 384 n 5 [2011]). A court may overrule a precedent “when persuaded by the ‘lessons of experience and the force of better reasoning’ ” (People v Bing, 76 NY2d 331, 338 [1990], quoting Burnet v Coronado Oil & Gas Co., 285 US 393, 407-408 [1932, Brandéis, J., dissenting]) and there is no requirement that a patent judicial mistake be allowed to “age” before it may be corrected. The holding in Bard that liability for animal-induced injuries cannot be based on negligence not only “creates more questions than it resolves” (Taylor, 9 NY3d at 149, citing Bing, 76 NY2d at 347), but also “involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience” (People v Hobson, 39 NY2d 479, 487 [1976], quoting Helvering v Hallock, 309 US 106, 119 [1940]). The sounder doctrine is the Restatement position.
The “troublesome” consequences of Bard “on our jurisprudence” (Bing, 76 NY2d at 348) were clear early on. In 2007, in *1155 Bernstein, two Justices of the First Department pleaded for a less restrictive understanding of Bard, noting that they could “not view Bard v Jahnke as eradicating the continued viability of prior cases which impose an enhanced duty toward children upon property owners who keep animals, where the presence and actions of children on the premises are reasonably foreseeable” (Bernstein v Penny Whistle Toys, Inc., 40 AD3d 224, 227 [1st Dept 2007, Saxe, J., dissenting in part]). The following year, in Petrone, the Second Department, noting that Bard was inconsistent with this Court’s language in Hyland, essentially treated the remarks in Bard about common-law negligence as dicta (see Petrone, 53 AD3d at 225-226, 228). In 2012, in Hastings, the Third Department, while applying Bard, expressed its strong misgivings concerning that ruling, as noted above (Hastings, 94 AD3d at 1173; see Bloomer, 94 AD3d at 1274 [noting that the Third Department was “constrained to view this matter solely in the context of strict liability”]).
In addition, our trial courts have expressed serious discomfort with Bard (see e.g. Krieger v Cogar, 26 Misc 3d 1225[A], 2010 NY Slip Op 50249 [U] [Sup Ct, Niagara County 2010]), distinguished the case (see e.g. Jetter v Hall, 20 Misc 3d 306, 308-309 [Sup Ct, Monroe County 2008]), or attempted to use the Hastings exception as a means of alleviating the limits of Bard (see e.g. Cappellino v Lake Huntington Summer Community Inc., 46 Misc 3d 486, 490-491 [Sup Ct, Kangs County 2014] [interpreting Hastings “as broadly applicable and intending to cover incidents of obvious animal owner negligence that would otherwise go unguarded against under Bard’s vicious propensity — strict liability scheme of liability”]).
This strong inclination on the part of lower courts to carve out exceptions to Bard was of course exemplified again in Doerr. The First Department held, on reargument after our Court decided Hastings, that ordinary negligence principles apply if a case “is about the actions of a person that turn[ ] an animal into an instrumentality of harm” (Doerr v Goldsmith, 110 AD3d 453, 455 [1st Dept 2013]). The sentiment is echoed in the Chief Judge’s proposed exception to Bard that “where a plaintiff sustains injury as the direct result of actions that a domestic animal took under the owner’s direction and control, a cause of action in negligence should lie” (op of Lippman, Ch. J., dissenting in Doerr v Goldsmith and concurring in Dobinski v Lock- *1156 hart at 1142).[3] The Bard decision has created more questions than it resolved.
VL
Nevertheless, the Court now reasserts Bard, and declines to extend Hastings, despite the striking similarities between Hastings and one of the cases before us, Dobinski v Lockhart. In my view, Dobinski raises the same question whether “a landowner or the owner of an animal may be liable under ordinary tort-law principles” when his animal, usually kept on his farm, “is negligently allowed to stray from the property on which the animal is kept” (Hastings, 21 NY3d at 125-126). In Dobinski, just as in Hastings, to invoke Bard’s restrictive rule is “to immunize defendants who take little or no care to keep their [animals] out of the roadway” (id. at 125). Applying Bard gives dog owners no incentive under the tort law to exercise reasonable and cost-effective care over their animals so as to prevent the risk of accidents such as what occurred to plaintiff Dobinski in Franklinville.
The concurring opinion now supplies, for the first time, some discussion of the policy considerations missing from Bard and its immediate progeny, opining that “[a]bsent awareness of a domestic animal’s previously demonstrated tendency to harm others, the owner should not bear the costs of the animal’s instinctive decisions” (concurring op at 1137). This reasoning loses sight of the fact that it is the owners of domestic animals, and only their owners, who have the “expertise and opportunity to foresee and control hazards, and to guard properly against their own negligence and that of their agents and employees” (Vendrella, 311 Conn at 322, 87 A3d at 559 [brackets and citation omitted]). This is as true of the owners of dogs as it is of those who own horses and other farm animals. Fundamentally, just as “a farm owner’s decision to allow his or her farm animals to wander freely onto a public road or someone else’s property ... as a commonsense matter violates societal expectations in a manner that gives rise to negligence liability” (concurring op at 1128), so his or her decision to allow dogs to wander freely onto a public road should give rise to negligence *1157 liability. There is no logical difference. Certainly dogs are less “difficult to train to remain on one’s premises of their own accord” {id. at 1128) than farm animals, which typically must be fenced in, but that only spotlights the nature of the negligence of one who fails to train his or her dogs not to stray.
The concurring opinion argues that “[t]he average New Yorker knows or ought to know that he or she will encounter insufficiently restrained pets, which are not confined to the owner’s premises and may harm others depending on the disposition of the pet and the degree of training it has received” (concurring op at 1129). Perhaps this is a reference to an encounter such as occurred to plaintiff Doerr in Central Park, where the pet that caused injury was in the company of its owner. It is certainly not true, either in Franklinville or in Manhattan, that the average citizen expects to encounter unrestrained and unaccompanied dogs, running loose among traffic, that may either keep to themselves or else “harm others depending on . . . disposition . . . and . . . training” {id.). The ubiquity of “ordinance [s] restricting dogs from running at large . . . suggest[s] that, whatever may have been the expectation in an earlier, more agricultural age, it is no longer expected that dogs will roam the highways of this State at will” (Young, 76 NY2d at 1012 [Kaye, J., dissenting]).
I would adopt the Restatement doctrine: that even if the owner of a domestic animal has no reason to believe the animal abnormally dangerous, the owner will still be subject to liability for harm done by the animal if he or she is negligent in failing to prevent that harm. This is a clear, reasonable and equitable rule that reflects the law in most states and corresponds to the majority position in New York before Bard.
Accordingly, in Doerr, I would affirm the order of the Appellate Division that affirmed Supreme Court’s order denying defendant’s motion for summary judgment. In Dobinski, I would reverse the order of the Appellate Division that reversed Supreme Court’s order denying defendants’ motion for summary judgment. There are triable issues of fact concerning defendants’ negligence, given their practice of allowing their dogs to run at large without a leash (see Local Law No. 1 (2005) of Town of Franklinville §§ 5 [a]; 4 [g] [relating to the control, confining and leashing of dogs]), the proximity of their farm to a busy road, and their habit of encouraging the dogs to run behind wheeled vehicles, in the form of their “four-wheeler” all-terrain vehicles. Consequently, defendants’ summary judgment motion should have been denied in Dobinski.
*1158 In Doerr v Goldsmith: Order reversed, with costs, defendant Smith’s motion for summary judgment dismissing the complaint granted and certified question answered in the negative, in a memorandum.
Judges Read, Rivera, Abdus-Salaam and Stein concur, Judge Abdus-Salaam in a concurring opinion in which Judges Read and Stein concur, Chief Judge Lippman dissents in an opinion. Judge Fahey dissents in a separate dissenting opinion, in which Judge Pigott concurs.
In Dobinski v Lockhart: Order affirmed, with costs, in a memorandum.
Chief Judge Lippman and Judges Read, Rivera, AbdusSalaam and Stein concur, Judge Abdus-Salaam in a concurring opinion in which Judges Read and Stein concur, and Chief Judge Lippman in a separate concurring opinion. Judge Fahey dissents in an opinion in which Judge Pigott concurs.

. The Restatement (Third) of Torts preserves the doctrine:
“Many animals, while lacking the element of abnormal danger that justifies strict liability, still involve some level of risk, especially when the animal is brought into various societal settings. In light of that risk, the animal owner can potentially be held liable under the . . . negligence standard for physical or emotional harms . . . Thus, the owner of a horse who takes the horse into a city street can foresee all kinds of ways in which the horse, if not attended to, might respond to the instincts common to horses and in doing so bring about an injury. For example, if frightened the horse might bolt and injure a person standing nearby. Accordingly, the owner can be found negligent for not properly restraining the horse. Similarly, the friskiness of dogs can create a variety of risks that the possessor of the dog, under negligence law, should make reasonable efforts to control. The dog’s possessor might be aware that children are playing with the dog in a way that might induce in the dog a harm-causing response. If so, the owner can be found negligent for not making a reasonable effort to intervene. The mere fact that a dog approaches people in a somewhat threatening way ordinarily does not suffice to show that the dog is abnormally dangerous. However, depending on the circumstances, it may be foreseeable that a frightened person will suffer injury while attempting rapidly to retreat. When this is foreseeable, the negligence standard may require certain precautions on the part of the owner.” (Restatement [Third] of Torts: Liability for *1144 Physical and Emotional Harm § 23, Comment i [“Negligence liability”] [2010].)

. For the opposite proposition, the Connecticut Supreme Court cited only two cases: our decision in Bard and Searcy v Brown (607 SW2d 937, 941 [Tex Civ App 1980]).

. Notably, the concurring opinion does not rule out the possibility that an exception to Bard would apply when a defendant’s supervision of a dog or other domestic animal is “undertaken with the intent to cause harm to another or with conscious disregard of a known and unjustifiable risk of harm to another” (concurring op at 1139 n 4).